CHEMICAL BANK, Plaintiff–Counter–Defendant–Appellee,

v.

Jeanne Marie DANA, also known as Ashton Sloane, also known as Patricia Delafield, also known as J. Martin Dana, also known as Jeanne Peters, Defendant–Counter–Claimant–Appellant.

No. 99–7524.

United States Court of Appeals, Second Circuit.

Feb. 2, 2001.

Jeffrey E. Glen, DeForest & Duer, New York, NY, for appellant.

Steven M. Frederick, Wofsey, Rosen, Kweskin & Kuriansky, Stamford, CT, for appellee.

Present OAKES, STRAUB and POOLER, Circuit Judges.

## SUMMARY ORDER

AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby AFFIRMED.

Defendant-appellant Jeanne Marie Dana appeals from a verdict after a jury trial conducted before the United States District Court for the District of Connecticut (Holly B. Fitzsimmons, *Magistrate Judge*) awarding Chemical Bank ("Chemical") approximately $1.5 million dollars in its action seeking recovery on a personal guaranty Dana executed.

Chemical Bank filed this action on June 11, 1992 against Dana on a personal guaranty she executed, seeking payment of all of the liabilities of Streets Ahead, a corporation formed by Dana for the sole pur-

pose of leasing property in London. In addition to Streets Ahead's promissory note, Chemical had required a personal guaranty from Dana to fund Streets Ahead's acquisition of the London property. In the guaranty, Dana agreed to guarantee "absolutely and unconditionally, to the Bank the payment of all liabilities of [Streets Ahead] to the Bank of whatever nature, whether now existing or hereafter incurred ..." Streets Ahead defaulted on its obligation to Chemical; Chemical notified Dana that it intended to hold her liable under the guaranty and that it was commencing legal proceedings in England to collect amounts due. After various proceedings in England, the details of which will not be summarized here, Chemical became the absolute owner of the leasehold interest in the London property but the underlying debt of Streets Ahead and Dana's liability under the guaranty were *not* extinguished.

Because these various legal proceedings in England did not enable Chemical to recover the full amount due, Chemical also sought a prejudgment attachment on property Dana owned in Westport, Connecticut in the United States District Court for the District of Connecticut (José A. Cabranes, *Judge*).

On June 30, 1992, the District Court, upon a finding of probable cause, awarded Chemical a prejudgment attachment on the property. After the District Court removed a prior injunction prohibiting Dana from transferring the property without a court order, Dana conveyed the Westport property to Connaught Properties, Inc., a company Dana owned and controlled, for no consideration by a quit-claim deed. The District Court (Holly B. Fitzsimmons, *Magistrate Judge*) later found that before she conveyed the property, Dana was on notice that Chemical would seek an upward modification of the first attachment to secure the interest that was accruing on her debt to Chemical. On August 12, 1994, the District Court granted Chemical's motion for a second attachment on the Westport property to account for interest of approximately $114,000 that had accrued. On September 12, 1994 Chemical filed its third amended complaint adding Connaught as a defendant and an allegation that Dana had fraudulently conveyed, as defined under Connecticut law, the Westport property to Connaught.

On September 23, 1994, Connaught filed for reorganization under the Bankruptcy Code, 11 U.S.C. § 301 (1993). The instant case went to trial before a jury on March 1, 1996. At that time, Connaught was unable to proceed due to a conflict of interest involving its counsel. Judge Fitzsimmons severed the trial, with the trial proceeding solely against Dana. Chemical won at trial with a resulting entry of judgment against Dana for approximately $1.5 million. The remaining action against Coan, the trustee of Connaught's bankruptcy estate, was resolved by the District Court's order granting Chemical's motion for summary judgment as to the fraudulent conveyance claim, granting its motion to recover on its second attachment, and denying Coan's cross-motion in opposition. Dana now appeals, raising several contentions, each of which we address in turn.

### 1. Chemical's Alleged Failings of Proof

■ Dana first claims that, as a matter of law, Chemical could not recover against her because it never produced the original amended promissory note entered into by Streets Ahead nor proved that it actually owned the note as required under New York's Uniform Commercial Code § 3–804 (1991).[1] This contention is without merit.

---

**1.** N.Y. U.C.C. § 3–804 (1991) provides in relevant part:

First, Chemical sued her on the guaranty she executed and produced an original copy of that guaranty at trial. *See* Third Am.Compl. ¶¶ 6–14. Second, to the extent that Chemical needed to prove the underlying monetary obligation to the guaranty, it produced the original promissory note (the amended note revealed no substantive changes from the initial note) and ample testimony from a bank representative regarding the loan to Streets Ahead, the promissory notes (original and amended), Dana's personal guaranty, and evidence of both Streets Ahead's and Dana's defaults on their obligations.

### 2. Effect of English Proceedings on Chemical's Current Claim

■ Second, Dana argues that because Chemical instituted a "possession action" against Streets Ahead that resulted in what Dana labels a "foreclosure," it is not permitted under New York law to later sue on the promissory note without requesting permission of the first court involved. Chemical responds that it never participated in a foreclosure action in London, but rather participated in a possession action and a forfeiture action.[2] Because the property at issue is located in London and not New York, Dana's reliance on New York law is unavailing. *See Provident Sav. Bank & Trust Co. v. Steinmetz,* 270 N.Y. 129, 132, 200 N.E. 669 (1936) (predecessor statute to N.Y. Real Property Actions & Proceedings ("RPAPL") § 1371 applies only to mortgaged property located in New York); *Lombardo v. Fielding,* 225 A.D.2d 672, 639 N.Y.S.2d 483 (2d Dep't 1996) (requirement under RPAPL § 1371 to obtain deficiency judgment in foreclosure action applies only to mortgages secured by property located in New York); *Chase Manhattan Bank, N.A. v. Reale,* 92 civ. 1042 (JSM), 1992 WL 297576, at *4 (S.D.N.Y. Oct. 7, 1992) (rejecting argument that the failure to elect remedies during foreclosure proceeding on Connecticut property precluded subsequent deficiency judgment in New York).

■ New York's merger doctrine, which extinguishes a mortgage when a fee and a lesser estate, like a mortgage, are in the same person at the same time, is also inapplicable. Dana failed to dispute Chemical's statement of material facts that the "Order of Possession entered by the English Court did not serve to extinguish either Streets underlying debt on the mortgage, or Dana's liability on the personal guaranty," and may not do so on appeal. *See United States v. 143–147 E. 23rd St.,* 77 F.3d 648, 658 (2d Cir.1996). Moreover, merger is a disfavored concept and if it appears to be against the interest of the party acquiring both estates to have a merger occur, then equity will presume that the party intended that there should not be a merger. *See Evans Prod. Co. v. Decker,* 52 A.D.2d 991, 383 N.Y.S.2d 457, 460 (3d Dep't 1976). The guaranty expressly provides that Dana "absolutely and unconditionally" guarantees the payment of all liabilities of whatever nature. Thus, both as a matter of contract language, and

The owner of an instrument which is lost ... may maintain an action in his own name and recover from any party liable thereon upon due proof of his ownership, the facts which prevent his production of the instrument and its terms. The court shall require security ... indemnifying the defendant ... against loss, including costs and expenses, by reason of further claims on the instrument....

2. According to English law, in a possession action, a mortgagee seeks a court order permitting it to exercise its right to re-possess and sell the mortgaged property following a breach by the mortgagor. An order for possession does not preclude an action for a deficiency judgment based on the mortgagor's outstanding indebtedness.

under *Decker*, Dana cannot avoid her obligation under the guaranty by arguing merger.[3]

### 3. Prejudgment Attachment Hearing

Dana next asserts that the District Court's decision to continue with the attachment hearing violated her due process rights when, despite having requested the presence of counsel, Dana was not actually represented by counsel at the hearing.

At the hearing, Dana was brought in from a local correctional facility, in which the District Court had placed her for contempt in a different action, and she stated "As I said, I haven't seen these [motion for attachment] papers. I haven't had the opportunity to discuss the matter with an attorney. And until such time as I am able to discuss it with an attorney, I'm requesting that this matter be adjourned. I can't defend myself." Counsel for Chemical informed the District Court that Dana had been served with the motion papers on June 17, 1992 and that he had received a phone call from Dana on that date informing him of her attorney, James Miller. Chemical's counsel sent Miller a copy of the relevant papers. Miller attended the first attachment hearing but declined, for reasons not apparent in the record, to make an appearance. Dana admitted that she had received notice of the hearing. Chemical also admitted a copy of a bankruptcy petition that Dana had filed listing her indebtedness. Dana explained that although she had listed all the guarantees she had made in the past, including the guarantee to Chemical, she denied that she owned Chemical this money. Chemical acknowledged her desire for counsel but "submit[ted] to the Court that the need for security in this instance, as reflected in this Court's order in the Banque Paribas matter which is recorded in the Westport land records, suggests that the plaintiff may be in some peril if the property is not attached." The District Court found the requisite probable cause for granting the attachment, arranged for Dana to have better access to counsel, and noted that he was "intimating no view on the ultimate merits of the plaintiff's claim against you. And I also emphasize the fact that upon application by you, or an attorney representing you, I am prepared to hold a hearing promptly within days of a request where this whole matter can be effectively reopened and any evidence can be taken and, if necessary, the Court would modify or vacate the attachment order which it is entering today." There was no present danger of Dana's transferring this property to avoid creditors such as Chemical, however, because the District Court had enjoined her from doing so on June 11, 1992, approximately two weeks prior to the attachment hearing.

■ Preliminary, we note that in her motion to dismiss the prejudgment attachment, Dana did not claim that probable cause did not exit for the issuance of the attachment. On appeal, Dana offers two challenges to what occurred below: first, she asserts that the District Court's decision to deny a continuance and to proceed with the attachment hearing violated her due process rights and second, the District Court's decision to grant an attachment was erroneous because no exigent circumstances existed.

---

**3.** To the extent that Dana attempts to show prejudice because she was not personally included as a defendant in the possession action, she ignores the fact that she failed to dispute Chemical's assertions that she was an active participant in both the possession and forfeiture actions at summary judgment as the sole shareholder in Streets Ahead. She also fails to challenge the District Court's conclusion that she should be deemed to be in privity with Streets Ahead and therefore be deemed to have notice of the proceedings.

**6**

As to the first contention, the decision to deny a continuance rests within the sound discretion of the trial court and will only be overturned for an abuse of discretion. *See Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964) ("it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel"); *Bergesen v. Lindholm*, 760 F.Supp. 976, 985 (D.Conn.1991) (no violation of due process when defendants had adequate pre-deprivation notice and a meaningful opportunity to be heard but did not avail themselves fully of that opportunity); *Rex Investigative and Patrol Agency, Inc. v. Collura*, 329 F.Supp. 696, 699 (E.D.N.Y.1971) ("plaintiff misconceives the concept of due process [; plaintiff] ... confuses the right to be represented by counsel, which is inherent in due process, with the necessity of being represented by counsel, which is not."). The District Court did not exceed its allowable discretion here. The District Court already had granted one continuance, Dana had ample notice of the proceeding, and had contacted an attorney. Further, she offered her explanation of why the guaranty was listed in her bankruptcy petition and denied that she owed Chemical any money.

As to her second contention, the District Court did not need to find exigent circumstances to grant the attachment in a dispute between a creditor and a debtor in addition to finding probable cause that Chemical would succeed on the merits. *See Shaumyan v. O'Neill*, 987 F.2d 122, 127 (2d Cir.1993) (upholding Connecticut prejudgment attachment statute as applied even though it permitted *ex parte* attachment without the posting of a security bond because, in a creditor-debtor relationship when the debt is easily documented, there is no substantial risk of errone-

ous deprivation). Here, Chemical and Dana had a creditor-debtor relationship, Chemical documented that Dana personally guaranteed the debt, and that she was deficient in her payments. Despite proceeding without affording Dana counsel, the District Court did not err in granting the prejudgment attachment.

4. Evidentiary Objections and the District Court's Questioning of Witnesses

Finally, Dana raises various objections to Magistrate Judge Fitzsimmons's evidentiary ruling and trial practices. Dana failed to object at trial to the majority of the alleged errors she now asserts on appeal, and thus, has waived them. Neither has she demonstrated that those rulings affected her substantial rights. Of her remaining objections, we find that the Magistrate Judge did not demonstrate bias toward Dana, either by allegedly mocking her or inappropriately questioning witnesses. The passage Dana quotes does not indicate that the Magistrate Judge treated Dana as "the butt of her humor" but only that the Magistrate Judge sought to clarify the question counsel posed—whether Dana wanted to change anything on her petition now or whether she had wanted to change anything on her petition when it was filed. The laughter mentioned on the transcript is not attributed to any specific person and reading the passage in context does not reveal that the Magistrate Judge attempted to create humor at Dana's expense.

The questions by Magistrate Judge Fitzsimmons, on which Dana focuses, are scattered throughout almost 200 pages of transcript. Dana failed to object to all of these occurrences except for the Magistrate Judge's extensive questioning of Dana. Dana's counsel requested that a limiting instruction be given to the jury to

assure the jury that the court had "no interest in one side or other, has no opinion and does not know anything and, clearly asked questions to try to assist the Jury." In her jury charge, the Magistrate Judge gave a curative instruction substantially similar to the one requested.[4] Magistrate Judge Fitzsimmons's curative instruction was more than sufficient to overcome any potential prejudice arising from her questioning of Dana. *See United States v. Vega*, 589 F.2d 1147, 1153 (2d Cir.1978) (curative instruction instructing that jurors should not take court's questioning to indicate an opinion overcame any potential error); *United States v. Berardelli*, 565 F.2d 24, 30 (2d Cir.1977) (curative instruction to jury telling jury that court expressed no opinion as to the defendant's guilt or innocence and to ignore any indications to contrary sufficient to overcome any potential prejudice arising from court's questioning of witness), *rejected on other grounds by United States v. Apfelbaum*, 445 U.S. 115, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980); *United States v. Natale*, 526 F.2d 1160, 1170 (2d Cir.1975) (no error from judge's allegedly hostile line of questioning where questions were "well within [the court's] active responsibility to assure that the issues were clearly presented to the jury").

We have considered all of Dana's remaining contentions on appeal and find them to be without merit. For the reasons stated above, we AFFIRM the judgment below.

---

4. Magistrate Judge Fitzsimmons instructed the jury as follows:

Statements, arguments and characterizations of counsel, however, including those made in the form of a question to a witness and including questions asked by me are not evidence in the case and should not be considered by you in your deliberations ...

Upon allowing testimony or other evidence to be introduced over the objection of one of the lawyers or on the occasions when I have asked questions of the witnesses, the Court has not indicated nor have I meant to indicate any opinion about the weight or effect of such testimony or evidence nor should you consider the number of questions I have asked a particular witness or the fact that I did not ask questions of some witnesses to have any significance, whatsoever.

You must not infer from anything I have said or done, in this trial, that I have made a judgment about the merits of the claims being made by either side. I have no opinion about the merit of any testimony. If I did, I would be encroaching upon your job and that, I will not do.