FILED

FEB 04 2016

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   NC-15-1149-JuKuW |
| ) | |
| FAROUK E. NAKHUDA, ) | Bk. No.   14-41156-RLE |
| ) | |
| Debtor. ) | |
| _____ ) | |
| ) | |
| ) | |
| ANDREW W. SHALABY, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **O P I N I O N** |
| ) | |
| PAUL J. MANSDORF, Trustee, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Argued and Submitted on January 21, 2016
at San Francisco, California

Filed - February 4, 2016

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Roger L. Efremsky, Bankruptcy Judge, Presiding

_____

Appearances:    Andrew W. Shalaby argued pro se; Dennis D. Davis
                of Goldberg, Stinnett, Davis & Linchey, argued
                for appellee Paul J. Mansdorf, chapter 7 trustee.

_____

Before:  JURY, KURTZ, and WANSLEE,* Bankruptcy Judges.

_____

        *  Hon. Madeleine C. Wanslee, United States Bankruptcy Judge
for the District of Arizona, sitting by designation.

JURY, Bankruptcy Judge:

The bankruptcy court issued an Order to Show Cause (OSC) directing Andrew W. Shalaby (Shalaby), the attorney for chapter 7[1] debtor Farouk E. Nakhuda, to show cause why he should not be required to disgorge fees he had been paid and sanctioned for violations of Rule 9011. After a hearing, the bankruptcy court issued a Memorandum Decision finding that Shalaby asserted numerous positions in filed documents without an adequate basis in law or fact. As a result, the court imposed sanctions consisting of: (1) non-compensatory monetary sanction for $8,000 payable to the bankruptcy court for violations of Rule 9011(b); (2) disgorgement of $4,000 that was paid to Shalaby by debtor under § 329; (3) suspension from the practice of law in the bankruptcy courts for the Northern District of California until he had completed 24 hours of continuing legal education in bankruptcy law and 3 hours of continuing legal education in ethics (except for those cases which he had already appeared); and (4) suspension of his electronic case filing (ECF) privileges until he had completed the ECF training provided by the clerk's office.[2] The bankruptcy court entered an Order On Memorandum Decision Re Order To Show Cause (Sanctions Order).

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure and "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] Subsequent to the filing of this appeal, Shalaby paid the sanctions, was reinstated to practice before the bankruptcy court in the Northern District, and had his e-filing privileges restored.

-2-

Thereafter, Shalaby moved to amend the Sanctions Order which the bankruptcy court denied (Amendment Order). Shalaby appeals from the Sanctions Order and the Amendment Order.

We AFFIRM in part and REVERSE in part. We AFFIRM the court's decision as to disgorgement under § 329 and suspension of Shalaby's ECF filing privileges. We REVERSE the bankruptcy court's decision finding that Shalaby's conduct violated 9011(b) and imposing sanctions of $8,000 payable to the clerk of the bankruptcy court. When the court initiates sanctions under Rule 9011(c)(1)(B), the party ordered to show cause is afforded no "safe harbor" opportunity to correct his or her conduct. Because there is no "safe harbor," the Ninth Circuit has instructed courts to apply a higher "akin to contempt" standard than in the case of party-initiated sanctions when applying Rule 9011(b). United Nat'l Ins. Co. v. R & D Latex Corp., 242 F.3d 1102, 1116 (9th Cir. 2001). Here, the bankruptcy court applied a "reasonableness" standard to Shalaby's conduct, which is the appropriate standard for party-initiated sanctions, but not for court-initiated sanctions. Moreover, the court's factual findings do not support the heightened "akin to contempt" standard.

## I. FACTS[3]

On March 16, 2014, Shalaby filed a skeletal chapter 7 case for debtor. Paul Mansdorf was appointed the chapter 7 trustee (Trustee).

At the time of his filing, debtor was operating five

---

[3] The facts leading up the OSC are comprehensively set forth in the bankruptcy court's Memorandum Decision dated April 27, 2015.

-3-

laundromats in the San Francisco and Vallejo area, either as sole proprietorships or as partnerships.  The petition listed no trade names for debtor and indicated the debts were primarily consumer debts rather than business debts.  The Schedules listed no executory leases, no interests in partnerships and no payments to landlords.

On March 31, 2014, Shalaby filed the first version of the Schedules and Statement of Financial Affairs (SOFA).  Schedule A listed a house valued at $433,000 and encumbered with secured debt of approximately $380,000.  Schedule B listed personal property consisting of $600 in debtor's wallet, $4,000 in a checking account, and $211 in a Fidelity Investments account (Fidelity Account).  Schedule B did not list any accounts receivable or interests in partnerships, but did list certain office equipment valued at $900 and inventory of detergents and sodas valued at $300.  Schedule C claimed a homestead exemption and an exemption in office equipment and inventory under California Code of Civil Procedure (Cal. Civ. Proc.) § 704.760 (tools of the trade).  Schedule I stated debtor was married with two adult children and was self-employed with $4,359 monthly net income from operating a business.

Question no. 18 in the SOFA listed five laundromat businesses in San Francisco and Vallejo.  Question no. 21 identified two of the laundromats as partnerships in which debtor owned a 50% interest and two as sole proprietorships.[4]

On April 10, 2014, Shalaby filed the first amendments to the Schedules.  Schedule B listed the same cash and bank

---

    [4]  The fifth laundromat was evidently closed.

-4-

accounts and now listed a $15,000 account receivable. Amended Schedule B also listed debtor as the 50% owner of the partnership laundromats valued at $45,000 and added laundry machines valued at $437,485, but did not list the sole proprietorship laundromats. Schedule C listed the same homestead exemption and the same exemptions in the office equipment and inventory and added an exemption valued at $0 for the partnership laundromats (erroneously referring to Cal. Civ. Proc. § 704.010, the exemption for motor vehicles). Schedule D added a secured creditor owed $437,485 with a lien on the laundry machines.

Before the meeting of creditors took place, Shalaby and Trustee exchanged emails. The April 7, 2014 email from Trustee to Shalaby asked about the laundromats' entity status and requested Shalaby to confirm that any sole proprietorship businesses were not operating and that no estate property was being used. Shalaby replied that the sole proprietorship laundromats were still in business. In response, Trustee informed Shalaby that debtor could not operate a sole proprietorship business while he was in chapter 7.

Despite this prior communication, when debtor appeared with Shalaby at the § 341 meeting of creditors on April 16, 2014 (§ 341 meeting), he testified that he was still operating the laundromats. Trustee's counsel advised debtor that he could not continue to use business income to pay rent to the landlords and could not operate the businesses. Shalaby responded: "I am not sure you are right about that . . . it is not so black and white." Shalaby requested Trustee to provide him with authority

-5-

for this position and give him an opportunity to respond.

**A. The Turnover Order**

On April 17, 2014, Trustee filed an Ex Parte Application to Cease Debtor's Operations and Turnover Non-Exempt Funds and Records. Attached to the application was the supporting declaration of Trustee's counsel describing debtor's post-petition use of estate assets and continued operation of the sole proprietorship laundromats.

On the same date, the bankruptcy court signed an order granting the application, which required debtor to (1) turnover all of his bank account proceeds; (2) shut down the sole proprietorship laundromats and give the keys to Trustee; (3) stop using estate assets for the operation of any business; and (4) provide Trustee with bank records for all post-petition activity.

Instead of advising debtor to comply with the Turnover Order, on April 17, 2014, Shalaby filed an Ex Parte Application for Briefing and Hearing Schedule for Motion to Remove Trustee and Motion to Set Aside Turn-Over Order or Direct Turn-Over to New Trustee. The application sought to remove Trustee because of the way he had conducted the § 341 meeting. Shalaby also asserted that the Turnover Order suffered from a "due process problem" as it had been granted without debtor being given an opportunity to respond. Shalaby further argued: "The [T]rustee's proposal is simply to wipe out those businesses and shut them down immediately, which will cause irreparable harm to debtor as well as to potential creditors." The bankruptcy court denied the application on April 18, 2014.

On April 21, 2014, Shalaby filed an Ex Parte Application to Set Aside Turnover Order for Failure to Notice Hearing. The application argued that the Turnover Order was issued in violation of the Fifth and Fourteenth Amendments. Shalaby further asserted that the "laundry machines that are not exempted as tools of the trade are secured by liens and there is no equity" and the "two businesses themselves are upside-down with secured liens. It appears they are exempted." This application did not cite the Bankruptcy Code or any relevant case law (although it did cite the Fourteenth Amendment and case law regarding due process).

On April 22, 2014, Shalaby filed an amended application. The amended application repeated his previous arguments and proposed that the bankruptcy court amend its Bankruptcy Local Rule (BLR) 9014-1 to provide for hearings on ex parte matters. In Shalaby's own words:

> Even if laws do in fact exist that mandate the closure of a business upon filing of a Chapter 7, there is a fundamental due process violation insofar as there is no notice given to the debtor of any such law in existence. Even to the extent that if such a law should exist, ignorance of the law is no excuse, the debtor would still be entitled to challenge any such law under the 5th Amendment or otherwise if he believes it to be unconstitutional. The point is, however, that the debtor has been entirely deprived of any and all opportunity to respond to the [T]rustee's application.

In connection with this amended application, Shalaby filed a Notice of Ex Parte Motion and Motion to Set Aside Turnover Order for Failure to Notice Hearing which purported to give notice that a hearing would be held two days later. The bankruptcy court denied this application on April 22, 2014.

-7-

On May 6, 2014, Shalaby filed a Motion for Return of Exempted Property and Removal of Trustee which was set for hearing on June 4, 2014. In the motion, Shalaby sought the return of the sole proprietorship laundromats and the "working capital and other exempted funds" held by Trustee. He also sought removal of Trustee on the grounds "exempted property does not belong to the Trustee." Shalaby asserted that Trustee had "taken control of two exempted assets, laundromats, and has terminated and destroyed those businesses without any benefit to the estate, maliciously, and in retaliation." Trustee opposed and, in an accompanying declaration, Trustee's counsel detailed numerous examples of Shalaby's ignorance of fundamental chapter 7 practice and incompetent representation of debtor. He also declared that "to date," debtor has never turned over any funds to Trustee despite the bankruptcy court's order.

Shalaby responded by withdrawing as "moot" the part of the motion requesting a return of the cash in the checking account and the sole-proprietorship laundromats. However, Shalaby withdrew this reply two days later and then filed another document entitled Withdrawal of Moot Portions of Motion and Reply to Opposition to Motion to Remove Trustee. Shalaby withdrew this motion in its entirety one day before the June 4th hearing "on grounds of obsolescence."

**B.    Turnover Order Appeal**

On April 24, 2014, Shalaby filed a Notice of Appeal to this Panel, purporting to appeal the Turnover Order, the order denying his request to stay the Turnover Order, and the order denying his request to set aside the Turnover Order. On the

same day that Shalaby filed his designation of the record on appeal, he filed another document in the bankruptcy court captioned Objection to Turnover Motion. This objection repeated his prior arguments and again requested the bankruptcy court to hold a hearing on the turnover issue.

On May 1, 2014, Shalaby filed a motion to have the appeal decided by the Ninth Circuit on the basis that the question of law presented (i.e., whether the bankruptcy court can issue a turnover order on an ex parte basis) was "of national importance with no other authority in existence in any jurisdiction."

Following briefing, the Panel heard oral argument on February 19, 2015. The day after oral argument, Shalaby filed a motion to dismiss the Turnover Order appeal.

On March 3, 2015, the Panel issued its Memorandum and Judgment affirming the Turnover Order and denying the late motion to dismiss the appeal. In its decision, the Panel confirmed the applicable provisions of the Bankruptcy Code which provide that a chapter 7 debtor is required to cease operation of a business upon filing for bankruptcy and which required debtor to surrender the business assets to Trustee.

On March 9, 2015, Shalaby filed Debtor's motion for rehearing of the BAP ruling affirming the Turnover Order, which the Panel denied on March 19, 2015. Shalaby then filed a notice of appeal of the BAP ruling to the Ninth Circuit. That appeal was subsequently dismissed on debtor's request due to a settlement with Trustee.

**C.   Contested Exemptions**

Between April 10 and April 25, 2014, Shalaby filed several

amendments to the Schedules. On May 6, 2014, Shalaby filed fourth amended Schedules B and C. This version of Schedule B listed the same cash, bank accounts, account receivable, and the partnership laundromats. This Schedule C claimed the same exemptions in the office equipment and inventory, added an exemption for $3,719 in the business checking account under Cal. Civ. Proc. § 704.060 (tools of the trade), and also claimed the partnership laundromats exempt, valuing the exemption at $0 under Cal. Civ. Proc. § 704.010 (motor vehicles). It did not exempt the $15,000 account receivable or the $600 cash in debtor's wallet.

On May 7, 2014, Trustee filed an objection to this version of Schedule C on the grounds that (1) money in a checking account does not qualify as a tool of the trade under Cal. Civ. Proc. § 704.060; (2) the $0 exemption in the partnership laundromats appeared to be an admission that there was no claim of exemption in these; and (3) the entire Schedule C was objectionable because it had not been signed by debtor. Trustee also stated that his investigation concerning these matters was continuing and that these objections would be set for hearing when that investigation concluded.

On June 2, 2014, Shalaby filed fifth amended Schedules B and C. This version of Schedule B listed the same cash, checking account, and account receivable. It added the sole proprietorship laundromats with an "unknown" value. This Schedule C again exempted as tools of the trade (Cal. Civ. Proc. § 704.060) the office equipment, inventory, the $3,719 in the checking account, and — for the first time — the $600 cash in

-10-

debtor's wallet. It also added an exemption based on Cal. Civ. Proc. § 706.050 (exempt earnings) for the account receivable, now characterizing it as "income not yet paid." The values in this version of Schedule B and C were cut in half under the theory that not all community property was property of the estate. Thus, for example, the checking account balance became $1,971 and the account receivable became $7,350.

On June 3, 2014, Trustee filed an Amended Objection to Debtor's Claim of Exemptions, incorporating his prior objection to exemptions and objecting to the exemption in alleged earnings due to debtor from a company named Borismetrics because they were the same account receivable previously listed in Schedule B. Trustee also objected to the 50% valuations of community property assets as violating § 541(a)(2).

On June 12, 2014, Shalaby filed yet another version of Schedules B and C, which increased the amount claimed in connection with the account receivable from $7,350 to $8,930.56 as exemptible earnings.

On July 10, 2014, Trustee filed an Amended and Supplemental Objections to Exemptions. It incorporated the prior objections and said:

> Debtor continues to claim a portion of his bank account proceeds exempt under California Code of Civil Procedure § 704.060 [sic] but has increased the amount of exemption from $7,350 to $8,930.56. The Trustee objects to said amended claim of exemption on the ground that it has no factual or legal basis as a claim of exemption in debtor's bank account proceeds.

**D.  Exemption Disputes and Turnover Compliance**

On July 22, 2014, the Trustee filed Memorandum of Points and Authorities in Support of Notice of Status Conference

-11-

Regarding Objections to Claims of Exemption and Request for Turnover of Assets (July Motion), along with a Notice setting a hearing for September 3, 2014. There was no motion accompanying the pleadings. In the points and authorities, Trustee sought turnover of cash which debtor had, on advice of Shalaby, refused to turn over to Trustee (i.e., $600 cash, $3.12 in savings account, $3,719 in checking account, $2,471 accounts receivable collected post-petition, and $211 in the Fidelity Account, for a total of $7,274.41). It also restated Trustee's objections to the claimed exemptions in the account receivable recharacterized as exempt wages and the exemptions claimed in bank accounts as tools of the trade. The July Motion was supported by Trustee's counsel's declaration attaching excerpts from debtor's deposition at which debtor testified that he was not an employee of Borismetrics, the entity owing the accounts receivable.

The day before the hearing on the July Motion, Shalaby filed an Opposition and Objection to Procedurally Defective Motion. This opposition described the July Motion as procedurally defective because it was "not a status conference," but "facially a motion on a contested matter that is up on appeal, fully briefed, and awaiting a ruling." Shalaby further contended that the "motion" was contested and thus it should be denied for failure to comply with BLR 9013 or 9014. Because the bankruptcy court wanted to afford the parties an opportunity to address whether the pending appeal of the Turnover Order precluded a ruling on all or part of the July Motion, the court continued the hearing from September 3, 2014, to October 1, 2014, and set a briefing schedule regarding whether the pending

-12-

appeal affected the court's jurisdiction. The bankruptcy court also allowed Shalaby an opportunity to file a brief regarding the validity of his claimed exemptions.

On September 10, 2014, Shalaby filed his brief on the merits of the exemption issues, supported by the declarations of debtor and Shalaby. Shalaby claimed that Trustee's objections to the exemption in the wages paid by Borismetrics to debtor and in the bank accounts was untimely. With respect to the bank account exemption, Shalaby argued that Trustee failed to identify any assets in dispute. He further asserted that it was correct to cut the amount of the Borismetrics receivable to $8,930 to reflect debtor's non-filing spouse's community property share, citing Cal. Family Code § 760, but failed to explain why § 541(a)(2) did not control. Shalaby also maintained that the Borismetrics payment of $8,930 was exempt as wages, but he failed to address debtor's prior deposition testimony that he was not an employee of Borismetrics.

In addition, Shalaby raised a new issue regarding debtor's unchallenged $100,000 homestead exemption. The bankruptcy court had previously entered an order approving the estate's compromise with debtor through which debtor had paid $30,000 to purchase the non-exempt equity in his house from the estate (Sale Order). Shalaby now argued that the Sale Order should be vacated "in the interest of justice" because — months after the fact — he had obtained an appraisal from which he had concluded that the house was worth less than Trustee's broker had said it was worth. He asked the bankruptcy court to enter an order directing Trustee to return this $30,000 (plus a $600 appraisal

-13-

fee) to debtor.

Trustee filed a supplemental brief on the merits of the exemptions. Trustee largely repeated his prior arguments and pointed out that debtor had agreed to the compromise embodied in the Sale Order and this belated attack on it was procedurally and substantively inappropriate. Trustee also maintained that debtor had amended his Schedules a number of times and, each time, Trustee filed a new set of objections to debtor's claims of exemption within thirty days of the amendments.

At the hearing on October 1, 2014, the bankruptcy court sustained Trustee's objections to the claimed exemptions and denied debtor's belated attack on the Sale Order. The court also indicated it intended to issue an OSC directed at Shalaby for the positions he had taken during the case. The court then issued an order sustaining Trustee's objection to the exemptions, denying debtor's request for return of the $30,000 in connection with the Sale Order, and ordering debtor to turn over (1) $600 in cash; (2) $2,741 account receivable collected post-petition; and (3) $211.29 from the Fidelity Account to Trustee within ten days of the order (October 2 Order).

The day after this hearing, Shalaby filed a request that the court order a settlement conference. In the request, Shalaby stated: "Unfortunately, I must agree with the court, largely, that with a bit more effort and legal research, many of the problems and matters disputed could have and would have been avoided." He then quoted Rule 9011(b) and said:

> [W]hile a matter may explain the reason I admittedly failed to diligently research some of my legal contentions and presented incorrect interpretations of

-14-

applicable law (e.g. community property interest being irrelevant to exemptions, misapplication of 11 U.S.C. § 542(a), and other matters), that matter is quite personal and difficult to disclose on the record and/or in pleadings on an OSC hearing.

It went on to state "I do in fact recognize my mistakes, and appreciate the court's frustration." Shalaby suggested that the "practical thing" to do was to try to "settle the OSC/sanction by negotiating a reasonable payment to the trustee." The bankruptcy court declined to order a settlement conference.

**E.     The OSC**

On November 4, 2014, the bankruptcy court issued the OSC.[5] The OSC describes seven specific factual and legal positions taken by Shalaby in connection with the issues that culminated in the October 1 hearing: (1) he argued that Trustee's objections to exemptions were not timely when they were; (2) he argued that the value of assets was reduced by 50% as non-estate property ignoring § 541(a)(2); (3) he reclassified the Borismetrics account receivable as exemptible wages without factual or legal support (ignoring debtor's deposition testimony

[5] Creditor Mercy Commercial California (MCC) also responded to the OSC. MCC received relief from stay on May 29, 2014, to enforce the lease and recover the premises at 1305 Polk Street, San Francisco, California and that order was final. Relying on the order, counsel for MCC served a non-default notice of termination of the occupancy on debtor and then filed and served an unlawful detainer action in the San Francisco Superior Court. MCC alleged that debtor, through Shalaby's office, filed a Notice of Stay of Proceedings, which blocked the state court action from proceeding. This conduct, MCC asserted, was a misuse of the bankruptcy process and falsely stated to the state court that there was a stay when the opposite was true. As a result of this tactic, MCC incurred additional legal fees and expenses and delay. MCC urged the bankruptcy court to examine this particular act of debtor and counsel.

-15-

that he was not an employee); (4) he argued that Trustee's objections had not identified any assets in dispute; (5) he argued that a bank account was exempt as a tool of the trade with no supporting legal authority; (6) he attacked the Sale Order which was a final order; and (7) he argued debtor had no obligation to turn over assets based on his assertion that the scheduled values were inconsequential.

The OSC directed Shalaby to appear and show cause why he should not be required to disgorge the fees he had been paid or should not be otherwise sanctioned for his conduct in the case. Based on the seven illustrative factual and legal positions that Shalaby had taken, the specific violations described in the OSC were: (1) making arguments not warranted by existing law or non-frivolous arguments for its extension, modification or reversal; (2) failing to ensure that allegations and factual contentions had evidentiary support; (3) his inability or unwillingness to obtain the most basic knowledge of bankruptcy law or engage in the legal analysis necessary to competently represent debtor; (4) harming the estate by forcing Trustee to use limited estate assets to respond to the frivolous arguments and positions; and (5) failing to obtain original signatures on documents filed with the court. The court identified its authority for issuance of the OSC and possible sanctions as the court's inherent powers and § 105, § 329(b), Rule 9011(b) and (c), and paragraphs 8 and 9 of the ECF Procedures for the

bankruptcy court.[6]

Immediately after the OSC was issued, Shalaby filed an Ex Parte Application to advance the December 4, 2014 hearing date to November 20, 2014, due to a scheduling conflict. Shalaby proposed that the OSC response deadline be advanced to November 14, 2014. The bankruptcy court granted his request and reset the OSC hearing date and response deadline.

On November 6, 2014, Shalaby filed an Ex Parte Application for Order Directing Disgorgement in Discharge of the OSC. There, Shalaby moved the court for an order directing him to disgorge $4,000 in discharge of the OSC. Shalaby further said: "This counsel is very sorry that the bankruptcy has gone so awry, and hopes that his offer of voluntarily disgorgement of the fees will be to the Court's satisfaction." Trustee filed an objection to the application asserting that the damages to the estate were in excess of $30,000. The bankruptcy court subsequently denied the application.

Shalaby then responded to the OSC on the merits supported by his and debtor's declarations. Shalaby asserted that sanctions should not be imposed in the case because there was a good faith disagreement as to the interpretation of law and that imposing sanctions would chill his First Amendment rights. He further argued that (1) there was improper notice of a hearing for the July Motion; (2) Trustee's exemption objections should

---

[6] These paragraphs contain the requirements for signatures on electronically filed documents and retention requirements. Under BLR 5005-2(d), a debtor's counsel must obtain and retain wet signatures of debtor for ECF.

-17-

have been overruled; (3) § 541(a)(2) did not prevent him from taking the position that the non-filing spouse's community property share of non-exempt assets was not property of the estate and that the bankruptcy court should have held a trial on that issue; (4) the court should hold a trial on whether the Borismetrics payment was exemptible wages; (5) Trustee had not identified specific assets in dispute; (6) funds in a bankruptcy account could be exempted as tools of the trade; (7) the Sale Order could be challenged after the fact because a trustee should not be allowed to collect money or property from a debtor based on an artificially high valuation; and (8) his advice to debtor that he did not need to turn over assets to Trustee was justified because:

> [A]s a matter of logic, a property that has very low value, or a 'negative' value, is not an asset of the estate due to the lack of a value. This belief is based on an understanding of the trustee's statutory [duty] as specified in 11 U.S.C. § 704. Generally, the trustee's duty is to collect only assets of value that exceed the exemptions and to distribute those assets to the creditors.

Trustee responded to Shalaby with the declaration of his counsel which attached multiple exhibits evidencing alleged frivolous positions asserted by Shalaby. Shalaby objected to the declaration arguing that every matter therein was a privileged First Amendment communication pursuant to Cal. Civ. Code § 47, and that the declaration was the "equivalent of a SLAPP suit." Shalaby also argued that the declaration was an "undisguised attempt to circumvent the safe harbor provisions" of Rule 9011(c)(1)(A).

On November 20, 2014, the bankruptcy court held a hearing

on the OSC. At the conclusion of the hearing, the court requested a supplemental declaration from Trustee's counsel regarding attorney's fees incurred for the matters identified in the OSC. Trustee's counsel subsequently filed a declaration showing total fees and expenses of $58,679.89 through December 8, 2014, of which $14,231 were attributable to dealing with the issues outlined in the OSC.

Shortly after, Shalaby filed a motion to recuse Judge Efremsky based on alleged impartiality due to the fact Shalaby indicated an intent to file a lawsuit against Trustee. In the motion, Shalaby discussed numerous incidents where, in his opinion, the bankruptcy judge showed bias and prejudice against debtor and his counsel. In reaching his opinion, Shalaby stated:

> [H]e has now spoken with several attorneys and non-attorneys after they had listened to the audio of the OSC hearing and that every one expressed an unequivocal belief and conclusion that Judge Efremsky appears very biased and prejudiced in favor of the trustee and against the debtor and his counsel.

The bankruptcy court denied the recusal motion.

On April 27, 2015, the bankruptcy court issued its Memorandum Decision finding that Shalaby asserted numerous positions during debtor's case without an adequate basis in law or fact in violation of Rule 9011. Accordingly, the court imposed sanctions consisting of: (1) non-compensatory monetary sanction for $8,000 payable to the bankruptcy court; (2) disgorgement of $4,000 that was paid to him by debtor; (3) suspension from the practice of law in the bankruptcy courts for the Northern District of California until he had completed

24 hours of continuing legal education in bankruptcy law and 3 hours of continuing legal education in ethics (except for those cases which he had already appeared); and (4) suspension of his e-filing privileges until he had completed the ECF training provided by the clerk's office. On the same day, the court entered the Sanctions Order.

On April 30, 2015, Shalaby filed an application to amend the Memorandum Decision and Sanctions Order. The bankruptcy court denied that application.

Shalaby filed a timely appeal from the Sanctions Order and Amendment Order.[7]

## II. JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A). See In re Nguyen, 447 B.R. 268, 275 (9th Cir. BAP 2011)(en banc) (citing In re Brooks-Hamilton, 400 B.R. 238, 244 (9th Cir. BAP 2009) (acts leading to suspension occurred in matter central to administration of bankruptcy case). We have jurisdiction under 28 U.S.C. § 158.

---

[7] Shalaby's notice of appeal (NOA) states that he also appeals from the Memorandum Decision. The Memorandum Decision does not contain a judgment, order or decree. See Rule 8001(a). The NOA also does not mention the bankruptcy court's order denying Shalaby's motion for recusal. As a result, the recusal order is not before us in this appeal. In addition, as Shalaby has not asserted any arguments on appeal that relate to the bankruptcy court's denial of his application to amend, those arguments are waived. Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir. 1999).

-20-

## III. ISSUES[8]

Did the bankruptcy court abuse its discretion in imposing sanctions against Shalaby under Rule 9011?

Did the bankruptcy court abuse its discretion in ordering disgorgement under § 329 of all fees and costs paid by debtor to Shalaby?

Did the bankruptcy court abuse its discretion by suspending Shalaby's e-filing privileges until he participated in the training provided by the clerk's office?

## IV. STANDARDS OF REVIEW

All aspects of an award of sanctions are reviewed for an abuse of discretion. Orion v. Haffman (In re Kayne), 453 B.R. 372, 380 (9th Cir. BAP 2011); In re Nguyen, 447 B.R. at 276.

We review the bankruptcy court's decision regarding the proper amount of legal fees to be awarded to the debtor's attorney for an abuse of discretion. Hale v. U.S. Trustee, 509 F.3d 1139, 1146 (9th Cir. 2007).

We also review the bankruptcy court's interpretation and application of a local rule for an abuse of discretion. Price v. Lehtinen (In re Lehtinen), 564 F.3d 1052, 1058 (9th Cir. 2009).

Review for abuse of discretion has two parts. First, we "determine de novo whether the bankruptcy court identified the correct legal rule to apply to the relief requested." U.S. v.

---

[8] Shalaby has framed the issues differently and asserts that all the issues he has raised on appeal are questions of law subject to de novo review. We disagree with this contention. Upon our review of his brief and the record, we reorganized and rephrased the issues.

-21-

Hinkson, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc). If so, we then determine under the clearly erroneous standard whether the bankruptcy court's factual findings and its application of the facts to the relevant law were "(1) 'illogical,' (2) 'implausible,' or (3) 'without support in inferences that may be drawn from the facts in the record.'" Id. at 1262. Findings of fact are given great deference in this context. DeLuca v. Seare (In re Seare), 515 B.R. 599, 614 (9th Cir. BAP 2014).

We may affirm on any ground supported by the record. Shanks v. Dressel, 540 F.3d 1082, 1086 (9th Cir. 2008).

## V. DISCUSSION

### A. The Bankruptcy Court's Authority To Issue Sanctions

A bankruptcy court has the inherent authority to regulate the practice of attorneys who appear before them. Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991); Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.), 77 F.3d 278, 284-85 (9th Cir. 1996). "Inherent powers are the exception, not the rule," and, therefore, "must be exercised with great caution." Chambers, 501 U.S. at 64. "A specific finding of bad faith . . . must 'precede any sanction under the court's inherent powers.'" United States v. Stoneberger, 805 F.2d 1391, 1393 (9th Cir. 1986). The bankruptcy court also has express power to impose sanctions pursuant to Rule 9011 and its local rules. See In re Nguyen, 447 B.R. 380-81. A bankruptcy court may suspend an attorney from the practice of law for violations of Rule 9011. In re Brooks-Hamilton, 400 B.R. at 249.

**B.    Rule 9011**

The initial basis for imposing sanctions on Shalaby is Rule 9011, the bankruptcy counterpart to Civil Rule 11. Case law interpreting Rule 11 is applicable to Rule 9011. Marsch v. Marsch (In re Marsch), 36 F.3d 825, 829 (9th Cir. 1994).

Rule 9011(b) requires parties and their attorneys to ensure papers filed before a bankruptcy court are "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law" and that "allegations and other factual contentions have evidentiary support . . . ." Rule 9011(b)(2) and (3). Rule 9011(b) incorporates a reasonableness standard which focuses on whether a competent attorney admitted to practice before the involved court could believe in like circumstances that his actions were legally and factually justified. See Zaldivar v. City of Los Angeles, 780 F.2d 823, 830-31 (9th Cir. 1986).

When assessing sanctions *sua sponte* under Rule 9011(c)(1)(B) and under the law of this Circuit, the bankruptcy court is required to issue an order to show cause to provide notice and an opportunity to be heard and to apply a higher standard "akin to contempt" than in the case of party-initiated sanctions. R&D Latex Corp., 242 F.3d at 1115-16. The reason behind the heightened standard is because, unlike party-initiated motions, court-initiated sanctions under Rule 9011(c)(1)(B) do not involve the 21-day safe harbor provision for the offending party to correct or withdraw the challenged submission. Id. at 1116 (citing Barber v. Miller, 146 F.3d 707,

711 (9th Cir. 1998)).

In <u>Barber v. Miller</u>, the Ninth Circuit emphasized the distinctions between a party-initiated motion for sanctions under Civil Rule 11 and sanctions imposed upon the court's own initiative, finding they were not the equivalent. There, the district court granted the defendant's motion to dismiss the plaintiff's complaint with prejudice. The order granting the motion indicated that the district court would retain jurisdiction to consider sanctions. After dismissal, the defendant notified the attorney for the plaintiff by letter that it would be seeking sanctions and then it filed the motion. The district court granted the motion, awarding the defendant $2,500 in sanctions against the attorney. The attorney appealed and the defendant cross-appealed on the amount. The Ninth Circuit reversed the award of sanctions because the motion for sanctions did not comply with the safe harbor provision under Civil Rule 11.

The court then considered whether the district court's retention of jurisdiction for purposes of a sanctions motion could be equated to an election by the court to impose sanctions on its own motion. The Ninth Circuit concluded that it was not the equivalent, noting the distinction between a party-initiated motion for sanctions and sanctions awarded on the court's own initiative. The Ninth Circuit observed that the district court awarded sanctions to a party under circumstances which did not meet the standard for court-initiated sanctions. The court also noted that "the fact the district court exercised its discretion to award sanctions on motion of a party does not necessarily

-24-

mean that the court would exercise its discretion to impose sanctions on its own motion for the same conduct" since show cause orders "will ordinarily be issued only in situations that are akin to a contempt of court. . . ." 146 F.3d at 711 (citing Civil Rule 11, Adv. Comm. Notes to 1993 Amend.).[9]

Here, the bankruptcy court expressly applied the objective reasonableness standard to Shalaby's numerous violations of Rule 9011. The court dismissed Shalaby's contentions that his "good faith belief" or "opinion" supported his positions on the basis that his subjective intent was irrelevant since his conduct is measured against a reasonableness standard which consists of a competent attorney admitted to practice law before the court. With respect to each violation of Rule 9011(b) set forth in the OSC, the bankruptcy court expressly applied this standard to each of its factual findings.

The evidence in the record supports the bankruptcy court's

---

[9] Civil Rule 11, Adv. Comm. Notes to 1993 Amend., states in relevant part:

> The power of the court to act on its own initiative is retained, but with the condition that this be done through a show cause order. . . . Since show cause orders will ordinarily be issued only in situations that are akin to a contempt of court, the rule does not provide a 'safe harbor' to a litigant for withdrawing a claim, defense, etc., after a show cause order has been issued on the court's own initiative.

Rule 9011, Adv. Comm. Notes to 1997 Amend. states:

> This rule is amended to conform to the 1993 changes to [Civil Rule] 11. For an explanation of these amendments, see the advisory committee note to the 1993 amendments to [Civil Rule] 11.

ruling; it certainly shows that Shalaby's legal positions and arguments were objectively frivolous under the reasonableness standard. In fact, Shalaby admitted as much when he requested the court to order a settlement conference. There, he acknowledged that with a bit more effort and legal research, many of the problems and matters disputed could have and would have been avoided. He further stated that there was a "personal matter" which may explain why he admittedly failed to diligently research some of his legal contentions and presented incorrect interpretations of applicable law (e.g. community property interest being irrelevant to exemptions, misapplication of § 542(a), and other matters), but the record does not show what that "personal matter" was or whether it was a legitimate excuse for Shalaby's admitted digressions. Finally, Shalaby went on to say that he recognized his mistakes, and appreciated the "court's frustration." Therefore, at least then, Shalaby seemed to acknowledge that he had a duty to conduct a reasonable inquiry into the law and underlying facts before filing the documents, and that had he done so, many of the problems could have been avoided.[10]

But even if Shalaby's positions were frivolous under the reasonableness standard, the standard for court-initiated sanctions in the Ninth Circuit is "akin to contempt." Although we considered remand so that the bankruptcy court could apply

---

[10] In his brief, Shalaby has not directed us to any clearly erroneous facts which would warrant disturbing the bankruptcy court's decision based on its application of the reasonableness standard. Instead, he continues to assert that his positions were correct under the guise of zealously representing his client.

the proper legal standard, we ultimately conclude that certain factual findings made by the bankruptcy court foreclose that consideration.

Admittedly, the "akin to contempt" standard is neither well-developed nor consistently applied. However, case law makes it clear the alleged transgressions must exceed those for party-initiated sanctions. In United National Insurance Company v. R & D Latex Corporation, 242 F.3d 1102, the Ninth Circuit reversed the district court's imposition of *sua sponte* sanctions after examining the sanctioned attorneys' statements made in a Notice of Related Cases (Notice) they filed in connection with a removed action. Looking at all the circumstances, the court found the attorneys' actions "not so egregious as to merit *sua sponte* sanctions," and concluded that the "Notice was in neither purpose nor substance 'akin to contempt.'" Id. at 1116, 1118.

Accordingly, at bottom, the "akin to contempt" standard seems to require conduct that is particularly egregious and similar to conduct that would be sanctionable under the standards for contempt. See MyMedicalRecords, Inc. v. Jardogs, LLC, 2015 WL 5445987, at *2 (C.D. Cal. 2015) (finding that bad faith analysis applied to court-initiated sanctions under Civil Rule 11); Brown v. Royal Power Mgt., Inc., 2012 WL 298315, at *4 (N.D. Cal. Feb. 1, 2012) (finding that assertion of a position knowing that it is baseless "constituted bad faith and lacked forthrightness with the court" and thus was "akin to contempt."); Stone v. Wolff Properties LLC, 135 Fed.Appx. 56, 2005 WL 1389893, at *2 (9th Cir. June 13, 2005) (reversing district court's imposition of *sua sponte* sanctions, finding

-27-

that appellant's "conduct, though perhaps not laudable, was not so 'egregious' as to be considered 'beyond the pale.'") (citing R & D Latex Corp., 242 F.3d at 1116-18); Sanai v. Sanai, 408 Fed.Appx. 1, 2010 WL 2782636, at *3 (9th Cir. July 12, 2010) (affirming *sua sponte* sanction award by district court which issued OSC, gave appellants an opportunity to be heard, and expressly found they acted in bad faith); Lynch v. Cal. Ct. of Appeal, Third Dist., 2008 WL 2811197, at *7 (July 14, 2008) (noting that prior to a *sua sponte* imposition of sanctions under Civil Rule 11, the court must find that counsel's conduct was particularly egregious, i.e., "akin to a contempt of court"); compare Darulis v. Iaria, 2008 WL 5101932, at *4 (S.D. Cal. Dec. 1, 2008) (finding conduct was not of the nature of a violation of a court order and therefore could not be punished *sua sponte* under Civil Rule 11).

Here, the bankruptcy court's findings do not support the heightened standard. First, the court found that nothing in the record suggested that Shalaby had an improper purpose under Rule 9011(b)(1). Next, in considering the sanctions to impose, the bankruptcy court cited the ABA standards which include an inquiry into whether the attorney acted intentionally, knowingly or negligently. The bankruptcy court did not find Shalaby acted knowingly or intentionally, but that at a minimum, his conduct was negligent. The heightened standard of "akin to contempt" requires more than ignorance or negligence on the part of Shalaby. See Barber, 146 F.3d at 711 (noting that bad faith in an analogous context requires more than mere negligence). While we do not condone Shalaby's conduct, these factual findings

-28-

demonstrate that his conduct was neither in purpose nor substance "akin to contempt."

In sum, the bankruptcy court erred in sanctioning Shalaby for his conduct under Rule 9011 because it applied the wrong legal standard for *sua sponte* sanctions and its factual findings do not support — and in fact foreclose — the heightened standard of "akin to contempt."  Accordingly, the court abused its discretion in issuing sanctions under Rule 9011.

**C.    Section 329**

Section 329(a) requires an attorney representing a debtor in a bankruptcy case to file a statement regarding the compensation agreed to be paid for services in the case and the source of the compensation.  Section 329(b) provides in relevant part:  "If such compensation exceeds the reasonable value of any such service, the court may cancel any such agreement, **or order the return of any such payment**. . . . ."  (Emphasis added.) Bankruptcy Code § 329 is implemented by Rules 2016 and 2017. Rule 2016(b) provides that every attorney for a debtor, whether or not the attorney applies for compensation, shall file the statement required by § 329 of the Code.  Rule 2017(a) provides that on the court's own initiative, the court may determine whether any payment by the debtor, made directly or indirectly and in contemplation of the filing of a petition, to an attorney for services rendered or to be rendered, is excessive.

The standard applied under § 329(b) to determine the reasonable value of fees is set forth in § 330.  <u>Hale v. U.S. Trustee (In re Basham)</u>, 208 B.R. 926, 931 (9th Cir. BAP 1997). "The burden is upon the applicant to demonstrate that the fees

-29-

are reasonable." Id. at 931-32. Section 330(a)(3) states that in determining the amount of reasonable compensation, the court should consider the nature, extent, and value of the services rendered, taking into account all relevant factors, including (A) the time spent on the services; (B) the rates charged for the services; (C) whether the services were necessary or beneficial at the time the services were rendered; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (E) whether the person demonstrated skill and experience in the bankruptcy field; (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than bankruptcy cases.

The reasonable value of services rendered by a debtor's attorney "is a question of fact to be determined by the particular circumstances of each case. The requested compensation may be reduced if the court finds that the work done was excessive or of poor quality." In re Spickelmier, 469 B.R. 903, 914 (Bankr. D. Nev. 2012); see also In re Basham, 208 B.R. at 933 (disgorgement upheld for incomplete and inaccurate schedules, improperly claimed exemptions, improperly noticed plan confirmation hearing).

The bankruptcy court's OSC put Shalaby on notice of a potential disgorgement under this section. On appeal, Shalaby contends § 329 "could not, as a matter of law, apply in this case." Shalaby does not fully explain his position on this point, but presumably he contends that § 329 does not apply

since $4,000 was disproportionate to the services rendered. Shalaby is mistaken. As noted by the bankruptcy court, the question is not how much time Shalaby spent on the case and what he believes his theoretical unpaid bill might be. Rather, the question is whether the $4,000 he was paid was excessive for what he accomplished for debtor in this case.

The bankruptcy court properly considered the value of Shalaby's services under § 330(a)(3). Specifically, the court found factors (C) whether the services were necessary or beneficial and (E) skill and experience in the bankruptcy field "particularly important here." Applying those factors, the court found:

> First, as the issues listed in the OSC and the above discussion show, his services were not necessary or beneficial to the debtor and they were costly and detrimental for the estate. Second, it is apparent that Mr. Shalaby lacked skill and experience in this field; he lacked competence in the relevant substantive and procedural areas required to handle this case.
>
> His handling of this case showed he did not understand the implications of filing a chapter 7 case and did not understand the basic concepts, including the debtor's duties, the Trustee's duties, the nature of a bankruptcy estate, the duty to turn over assets, the rules regarding abandonment, the concept of rejection of an executory lease, or the importance of administrative rent. If he were competent, multiple amendments to the schedules would not have been necessary and he would have known he had to have the debtor sign them, as the applicable ECF rules require.

The record supports these findings and thus they are not clearly erroneous.

Shalaby also complains that of the $4,000, $306 was for the filing fee. According to Shalaby, § 329 cannot be used to direct a debtor's counsel to "disgorge" filing fees as this

-31-

would be a Fifth Amendment takings violation. Shalaby provides no analysis to support his conclusory statement nor does he bother to provide authority. The takings clause provides that "private property [shall not] be taken for public use without just compensation." U.S. CONST. amend. V. Suffice to say that a debtor's attorney does not have a property interest in his or her compensation that is protected under the Takings Clause of the Fifth Amendment.

In sum, the bankruptcy court applied the correct legal rule and its finding that the $4,000 paid to Shalaby by debtor exceeded the reasonable value of his services was not illogical, implausible, or without support in the record. Therefore, the bankruptcy court did not abuse its discretion when it ordered disgorgement of all fees, including the filing fee within the total amount to be disgorged. See DeLuca v. Seare (In re Seare), 515 B.R. 599, 621 (9th Cir. BAP 2014) (finding court did not abuse its discretion in including filing and credit report fees within the total amount to be disgorged).

**D. Suspension of ECF filing privileges**

The bankruptcy court stated in the OSC that it was considering sanctions based on Shalaby's admitted failure to obtain debtor's signature on documents filed with the court through ECF. The court further observed that Shalaby had admitted that it was his practice to not have his debtor clients sign any of the papers filed on their behalf. In response to the OSC, Shalaby maintained that he could not locate the ECF procedures on the bankruptcy court's website. The bankruptcy court noted that the procedures were readily available on the

website and that Shalaby was required to know the rules and abide by them if he was going to practice in that bankruptcy court. Accordingly, the bankruptcy court determined that the remedy for Shalaby's "flagrant violation" was to suspend his e-filing privileges until he participated in the training provided by the clerk's office.

On appeal, Shalaby acknowledges his oversight regarding the requirements for wet signatures. He asserts, however, that such oversight is not sanctionable under any provision of Rule 9011 nor § 105, especially since he rectified the error before the OSC hearing. He further argues that the bankruptcy court erred by not considering nonmonetary measures. We are not persuaded.

As noted by the bankruptcy court, Shalaby was a registered user of the bankruptcy court's CM/ECF system and thus bound by the procedures and rules governing electronic filings. The court's ECF Administrative Procedures ¶¶ 8 and 9 state in relevant part:

> A Registered Participant who electronically files a document . . . shall be deemed to have certified under penalty of perjury that he or she has personally reviewed the document.
>
> Pleadings . . . that are required to be verified . . . and all affidavits or other pleadings in which a person verifies, certifies, affirms or swears under oath or penalty of perjury concerning the truth of matters set forth in that pleading or document ('Verified Pleading') may be filed electronically . . . .
> The electronic filing of a Verified Pleading constitutes a representation by the Registered Participant . . . that the Registered Participant has in his or her possession at the time of filing the fully executed original, signed pleading/document.
>
> BLR 5005-2(d) provides:
> In the case of a Signatory who is not a Registered Participant, as in the case of documents requiring

-33-

multiple signatures or documents signed by a third party such as a debtor, the filing of the document constitutes the filer's attestation that the filer has possession of (i) an original ink signature, (ii) a copy of the original ink signature that has been electronically scanned, or (iii) a copy of the original ink signature transmitted by facsimile. The filer shall maintain records to support this attestation for subsequent production to the Court, if so ordered, or for inspection upon request by a party, until five years after the case or adversary proceeding in which the document was filed is closed.

Shalaby violated the ECF Administrative Procedures and BLR 5005-2(d) — he admitted he did not have debtor's original signatures on the documents he filed.

The bankruptcy court possesses the inherent authority to manage attorney practices before it and to impose sanctions for violation of its local rules. See Singh v. Singh (In re Singh), 2014 WL 842102, at *8 (9th Cir. BAP March 4, 2011). BLR 9011-1 states:

Any petition, schedule, statement, declaration, claim or other document filed and signed or subscribed under any method (digital, electronic, scanned) adopted under the rules of this Court shall be treated for all purposes (both civil and criminal, including penalties for perjury) in the same manner as though manually signed or subscribed.

Failure of counsel or of a party to comply with any provision of these rules or the Bankruptcy Rules shall be grounds for imposition by the Court of appropriate sanctions.

We can affirm the bankruptcy court's imposition of sanctions against Shalaby under this rule.

BLR 9011-1 authorized the bankruptcy court to use its authority to suspend Shalaby's e-filing privileges until he took further training. Moreover, contrary to Shalaby's contention, this remedy for the violation was a nonmonetary remedy and

Shalaby has already complied.[11]  Finally, unlike the court in In re Singh, nowhere did the bankruptcy court purport to rely on § 105 for its sanctioning power in connection with Shalaby's violations of the ECF procedures.  Thus, the issue of Shalaby's "bad faith" was irrelevant.  In sum, the bankruptcy court did not abuse its discretion when it sanctioned Shalaby by suspending his e-filing privileges until he participated in the training session offered by the clerk's office.

**E.   Request for Judicial Notice**

On August 30, 2015, Shalaby filed a request for judicial notice of the several documents pursuant to Fed. R. Evid. 201:

> A cover email from Attorney Dennis Davis, received by Appellant on August 19, 2015, advising that the Chapter 7 trustee collected $76,176.73 in funds in this bankruptcy case.  Attached to the email is Mr. Davis' "First and Final Application" for compensation, document number 285, which sets forth the amount of fees he has claimed at $62,627.50, and costs of $2,983.00.
>
> Judge Efremsky's order awarding fees of $62,627.50 and costs of $2,983.99 to Attorney Dennis Davis.
>
> A letter dated December 12, 2014 acknowledging receipt of Appellant's complaint of judicial misconduct no. 14-90182 pertaining to Judge Roger L. Efremsky.
>
> These documents are not relevant to the disposition of this

---

[11] Shalaby suggests that since he complied with the Sanctions Order by taking the ECF class, this portion of his appeal may be moot.  We do not think Shalaby's compliance with the Sanctions Order renders this portion of his appeal moot as we have jurisdiction to consider the legal question of whether Shalaby's conduct was sanctionable. See Fleming & Assocs. v. Newby & Tittle, 529 F.3d 631, 640 (5th Cir. 2008) ("Any non-monetary portion of the sanctions not rendered moot by settlement is appealable for its residual reputational effects on the attorney."); Dailey v. Vought Aircraft Co., 141 F.3d 224, 226 (5th Cir. 1998) ("This appeal is not moot because the [temporary] disbarment on the attorney's record may affect her status as a member of the bar and have other collateral consequences.").

appeal.  As judicial notice is inappropriate where the facts to be noticed are irrelevant, see Ruiz v. City of Santa Maria, 160 F.3d 543, 548 n. 13 (9th Cir. 1998), we deny the request for judicial notice.

## VI.  CONCLUSION

For the reasons stated, we AFFIRM in part and REVERSE in part.