FILED

MAY 6 2019

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

In re:                                )    BAP No.   NC-17-1256-BTaF
                                      )
DAVID MRDUTT and CHRISTINA            )    Bk. No.   11-61029-HLB
MRDUTT,                               )
                                      )
                Debtors.              )
_____)
                                      )
DEVIN DERHAM-BURK, Chapter            )
13 Trustee,                           )
                                      )
                Appellant,            )
                                      )
v.                                    )        **O P I N I O N**
                                      )
DAVID MRDUTT; CHRISTINA               )
MRDUTT,                               )
                                      )
                Appellees.            )
_____)

Argued and Submitted on May 25, 2018,
at San Francisco, California

Filed - May 6, 2019

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Hannah L. Blumenstiel, Bankruptcy Judge, Presiding

Appearances:    Jane Z. Bohrer argued for appellant Devin Derham-
                Burk, Chapter 13 Trustee.

Before:   BRAND, TAYLOR and FARIS, Bankruptcy Judges.

BRAND, Bankruptcy Judge:

Chapter 13[1] trustee, Devin Derham-Burk ("Trustee"), appeals an order granting the debtors' motion to modify their chapter 13 plan. The debtors proposed to modify their confirmed plan to surrender their residence to the lender. Trustee opposed the motion as untimely, because it was filed seven months after the debtors had completed their plan payments to Trustee. The bankruptcy court held that, because the debtors had not cured their prepetition mortgage arrears as provided for in the plan, the payments under the plan were not complete; therefore, the motion to modify was timely under § 1329(a). The court allowed the plan modification under § 1329(c) to surrender the residence, even though the 60-month time period set forth in § 1329(c) had already expired.

We agree with the bankruptcy court that the debtors' plan payments were not complete for purposes of § 1329(a). We conclude, however, that the debtors could not modify their plan to surrender their residence, because the surrender was a payment made outside the 60-month time limit. Accordingly, we REVERSE.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

David and Christina Mrdutt filed their chapter 13 bankruptcy case on November 30, 2011. Their residence, valued at $235,000, was encumbered by two deeds of trust in favor of Wells Fargo. Wells Fargo filed two related secured proofs of claim: one for $406,299.67 for the first lien (the primary mortgage), which

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

included nearly $65,000 in prepetition arrears; and one for $42,427.01 for the second lien (a HELOC). The Mrdutts later obtained an order avoiding the wholly unsecured second lien, which was contingent upon their completion of a chapter 13 plan and receiving discharges.

Prior to plan confirmation, the Mrdutts filed a declaration required by local guidelines stating that their request to Wells Fargo to modify the primary mortgage loan was still pending.

Months later, with the loan modification still pending, the bankruptcy court confirmed the Mrdutts' second amended chapter 13 plan on December 11, 2012 ("Plan"). The 60-month Plan provided $0 for allowed general unsecured claims. The Plan also provided that all prepetition mortgage arrears would be cured if Wells Fargo approved the loan modification; if Wells Fargo disapproved it, the Mrdutts would file a modified plan to pay the arrears. The Mrdutts also agreed to make all postpetition mortgage payments directly to Wells Fargo.[2]

Following confirmation, the Mrdutts continued to make regular payments to Trustee and the case proceeded uneventfully until after they made their final Plan payment to her in October 2016, which she distributed in November. In December 2016, Mr. Mrdutt wrote a letter to the bankruptcy judge asking her to stop Wells Fargo from foreclosing on the residence. Sadly, Mrs. Mrdutt had passed away from cancer. Mr. Mrdutt explained that Wells Fargo was refusing to deal with him for a loan modification because the

---

[2] The Mrdutts' "cure and maintain" plan for a long-term mortgage debt is authorized by § 1322(b)(5), which allows a debtor's plan to provide for the curing of any prepetition default within a reasonable time and maintaining postpetition mortgage payments while the case is pending. See Cohen v. Lopez (In re Lopez), 372 B.R. 40 (9th Cir. BAP 2007), aff'd, 550 F.3d 1202 (9th Cir. 2008).

-3-

loan was in Mrs. Mrdutt's name only.

In January 2017, Wells Fargo moved for relief from stay to foreclose its first lien on the residence. The Mrdutts had failed to make postpetition mortgage payments totaling $123,819. The outstanding debt for the primary mortgage was now $536,861. The residence was still valued at $235,000. The bankruptcy court granted stay relief but ordered that its effectiveness was stayed until entry of the Mrdutts' discharges.

In June 2017, Trustee filed notices of plan completion and requested that the case be closed without discharge. Trustee asserted that the Mrdutts were not entitled to a discharge because they had failed to deal with their prepetition mortgage arrears.

In response, the Mrdutts[3] moved to modify their Plan ("Motion to Modify"). Because they ultimately did not receive the loan modification, they wished to modify the Plan to surrender the residence. Trustee argued that the Motion to Modify was untimely, because plan payments had been completed months prior.

After a hearing, the bankruptcy court granted the Motion to Modify, finding that it was timely under § 1329(a) and that the Mrdutts could surrender the residence even though the 60-month time period under § 1329(c) had expired. Trustee timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(L). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1. Did the bankruptcy court err in determining that, because the Mrdutts had not completed all payments under the Plan due to their

---

[3] Mr. Mrdutt continued to prosecute the case on behalf of himself and his late wife. As a result, we refer to the Mrdutts in the plural.

-4-

failure to satisfy the prepetition mortgage arrears, the Motion to Modify was timely under § 1329(a)?

2. Did the bankruptcy court err in determining that the Plan, as modified, complied with the time limits set forth in § 1329(c)?

## IV. STANDARDS OF REVIEW

Modification under § 1329 is discretionary and is reviewed for an abuse of discretion. Powers v. Savage (In re Powers), 202 B.R. 618, 623 (9th Cir. BAP 1996). A bankruptcy court abuses its discretion if it applies the wrong legal standard or its factual findings are illogical, implausible or without support in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

While the bankruptcy court's decision whether to allow modification is reviewed for abuse of discretion, whether the bankruptcy court was correct in its interpretation of the applicable statutes is reviewed de novo. Mattson v. Howe (In re Mattson), 468 B.R. 361, 367 (9th Cir. BAP 2012) (citing Towers v. United States (In re Pac.-Atl. Trading Co.), 64 F.3d 1292, 1297 (9th Cir. 1995)).

## V. DISCUSSION

**A. The bankruptcy court did not err in determining that Plan payments were not complete for purposes of § 1329(a) and that the Motion to Modify was timely.**

A plan is a contract between the debtor and the debtor's creditors. Max Recovery, Inc. v. Than (In re Than), 215 B.R. 430, 435 (9th Cir. BAP 1997). The order confirming a chapter 13 plan, upon becoming final, represents a binding determination of the rights and liabilities of the parties as specified by the plan. 8 COLLIER ON BANKRUPTCY ¶ 1327.02 (Richard Levin & Henry J. Sommer

-5-

eds. 16th ed. 2019).

Under the Plan, the Mrdutts agreed to cure their prepetition mortgage arrears either through a loan modification or a modified plan. They also agreed to make all postpetition mortgage payments directly to Wells Fargo. When the loan modification failed, the Mrdutts sought to modify the Plan to surrender the residence to Wells Fargo sixty-seven months after the first Plan payment was due and after they had made all sixty Plan payments to Trustee.[4] The Mrdutts acknowledged that the Code did not necessarily support their position. Nevertheless, they were seeking a way to get a discharge.

Section 1329 provides that the bankruptcy court may modify a confirmed plan "[a]t any time after confirmation of the plan, but before the **completion of payments under such plan**[.]" § 1329(a) (emphasis added). See Danielson v. Flores (In re Flores), 735 F.3d 855, 859 (9th Cir. 2013) (en banc) (plan modification must occur before the completion of payments under the plan); In re Profit, 283 B.R. at 573 (same). The bankruptcy court reasoned that plan modification was still possible under § 1329(a), because the Mrdutts had not completed their plan payments due to the outstanding obligation of the prepetition mortgage arrears.

The question before us is whether the Plan was "complete" for purposes of § 1329(a) even though the Mrdutts failed to cure their prepetition mortgage arrears. Trustee maintains that only

---

[4] The 60-month maximum term for chapter 13 plans begins to run from the date when plan payments are statutorily required to commence, no more than 30 days after the plan is filed. Profit v. Savage (In re Profit), 283 B.R. 567, 575 (9th Cir. BAP 2002). The Mrdutts filed their initial plan in December 2011.

payments to the chapter 13 trustee are "payments under such plan" and that plan payments are "complete" once the debtor has made all plan payments to the trustee. We must determine what constitutes "payments under such plan" within the meaning of § 1329(a). Is it limited to those payments made to the trustee or does it include a debtor's direct payments to creditors?

While no controlling authority defines payments for purposes of plan modification under § 1329(a), courts have held in the discharge context of § 1328(a)[5] that a debtor's direct payments to a creditor for a debt treated by the plan are payments under the plan. Precisely, when the chapter 13 plan provides for the curing of prepetition mortgage arrears and a debtor's direct postpetition maintenance payments in accordance with § 1322(b)(5), such direct payments are "payments under the plan." And if the debtor does not complete "all payments under the plan," the debtor is not entitled to a discharge.

In re Coughlin, 568 B.R. 461, 474 (Bankr. E.D.N.Y. 2017), is an excellent example of the overwhelming majority of courts which have interpreted the term "payments" in § 1328(a) to include direct payments by the debtor to a creditor. See also Kessler v. Wilson (In re Kessler), 655 F. App'x. 242, 244 (5th Cir. July 8, 2016) (when a plan provides for the curing of mortgage arrears as well as direct maintenance payments, both payments fall "under the plan" for purposes of § 1328(a) because both payments concern the

---

[5] Section 1328(a) provides, in relevant part, that "as soon as practicable after completion by the debtor of **all payments under the plan . . .** the court shall grant the debtor a discharge of all **debts provided for by the plan** or disallowed under section 502 . . . ." (Emphasis added).

-7-

same claim; debtors' discharge properly denied for not making direct maintenance payments to creditor despite making all plan payments to trustee) (citing Foster v. Heitkamp (In re Foster), 670 F.2d 478 (5th Cir. 1982) (when the plan provides for curing of mortgage arrears, a debtor's direct mortgage payments to creditor are payments under the plan)); Evans v. Stackhouse, 564 B.R. 513, 518-20 (E.D. Va. 2017) (debtor's direct maintenance payments provided for in the plan were payments under the plan for purposes of § 1328(a)); In re Dowey, 580 B.R. 168, 172-73 (Bankr. D.S.C. 2017) (rejecting debtor's argument that payments under the plan in § 1328(a) means only those payments made to the chapter 13 trustee); In re Hoyt-Kieckhaben, 546 B.R. 868, 874 (Bankr. D. Colo. 2016) (both cure and maintenance payments are equal and necessary parts of a plan's treatment of a secured claim under § 1322(b)(5) and thus any payment made to effectuate the plan's treatment of the claim is a payment under the plan for purposes of discharge); In re Heinzle, 511 B.R. 69, 78-79 (Bankr. W.D. Tex. 2014) (debtors entitled to discharge only when they make all payments under the plan, which includes cure and maintenance payments under § 1322(b)(5)).

The court in Coughlin relied, in part, on Rake v. Wade, 508 U.S. 464 (1993), and the Supreme Court's interpretation of the phrase "provided for by the plan" in § 1325(a)(5).[6] In Rake, each debtor's chapter 13 plan proposed to pay all postpetition mortgage payments directly to the creditor and to cure the prepetition

---

[6] Notably, the debtor in Coughlin had already received a discharge despite failing to remain current on postpetition mortgage payments. The court was not aware of the default until after the discharge order had been entered. Ultimately, the court declined to vacate the discharge order despite the default, because the discharge had not been obtained by the debtor's fraud. 568 B.R. at 474-76.

mortgage arrearages, without interest, over the term of the plan. The issue was whether the oversecured mortgage creditor was entitled to postpetition interest on the arrearages, when the contract did not so provide. Because the plans "provided for" the creditor's claim by establishing repayment terms for the arrearages as permitted by § 1322(b)(5), the Court ruled that the creditor was entitled to interest on them. Id. at 473.

To reach its holding, the Court reviewed § 1328(a), which also contains the phrase "provided for by the plan," and noted:

> As used in § 1328(a), that phrase is commonly understood to mean that a plan 'makes a provision' for, 'deals with,' or even 'refers to' a claim. [Citation omitted]. In addition, § 1328(a) unmistakably contemplates that a plan 'provides for' a claim when the plan cures a default and allows for the maintenance of regular payments on that claim, as authorized by § 1322(b)(5). Section 1328(a) states that 'all debts provided for by the plan' are dischargeable, and then lists three exceptions. One type of claim that is 'provided for by the plan' yet excepted from discharge under § 1328(a) is a claim 'provided for under section 1322(b)(5) of this title.' § 1328(a)(1). If claims that are subject to § 1322(b)(5) were not 'provided for by the plan,' there would be no reason to make an exception for them in § 1328(a)(1).

Id. at 474-75. While the question of whether a debtor has completed "all payments under the plan" was not at issue in Rake, construing this language in § 1328(a) narrowly to include only those payments made to the chapter 13 trustee proves difficult given the Supreme Court's broad construction of "provided for by the plan," in that same section, to include claims that are merely referred to in the plan. See In re Gonzales, 532 B.R. 828, 832 (Bankr. D. Colo. 2015).[7]

_____

[7] But see Dukes v. Suncoast Credit Union (In re Dukes), 909 F.3d 1306 (11th Cir. 2018). In Dukes, the debtor was current on her mortgage payments at the time she filed her chapter 13 case but became delinquent at some point after confirmation. The mortgage lender foreclosed on its second lien and sought a

(continued...)

Only two courts have held that a debtor's direct payments on a nonmodifiable, nondischargeable residential mortgage loan under § 1322(b)(5) are not "payments under the plan" for purposes of § 1328(a). The first was In re Gibson, 582 B.R. 15, 24 (Bankr. C.D. Ill. 2018). In reviewing the language of § 1328(a), the Gibson court reasoned that the "ambiguous" phrase "all payments under the plan," which is used to define when completion of payments occurs (thus triggering entitlement to a full compliance discharge), and the phrase "provided for by the plan," which is used to describe the scope of the discharge, should have different meanings. The court concluded that the phrase "'under the plan' was intended to have a narrower effect, allowing for the possibility that not all creditors holding debts **provided for by the plan** are receiving payments **under the plan**" — i.e., direct

_____

[7](...continued)
personal judgment against the debtor post-discharge on its first lien. The mortgage lender reopened the debtor's case, seeking a determination that the first mortgage debt had not been discharged.

Relying on a narrow reading of Rake, the Eleventh Circuit held that the plan did not "provide for" the mortgage payments for purposes of § 1328(a), because the plan merely stated that postpetition payments would be made "outside the plan"; the plan did not set forth any repayment terms for any portion of the lender's mortgage. Id. at 1313-15. The Eleventh Circuit alternatively held that the first mortgage debt was not discharged based on § 1322(b)(2), which prohibits modification of the rights of holders of claims secured by the debtor's principal residence. Id. at 1316-18.

We note that the situation presented in Dukes was different from that in this case. There, the debtor was prepetition current on her mortgage payments. The Dukes court did not address the issue presented here, whether cure and maintain payments under § 1322(b)(5) are payments under the plan. Nevertheless, we also disagree with Dukes's narrow interpretation of Rake and whether postpetition mortgage payments are payments under the plan for the reasons set forth in this decision.

-10-

payments by the debtor to a creditor. Id. at 19 (emphasis in original). It followed, therefore, that completion of "all payments under the plan" meant only those payments made to the trustee. Id. The court disagreed with the "absolutist" view that § 1328(a) should be construed in a way that would make every uncured default on a direct payment grounds for dismissing a case without discharge. Id. at 23.

The Gibson court believed that Rule 3002.1[8] was to blame for the recent trend favoring dismissal without discharge in cases where the debtor made the required payments to the trustee but failed to make all of the direct mortgage payments to the creditor. Id. at 18-19. The court observed that, prior to the rule's adoption in 2011, the trustee generally was not privy to a debtor's direct payment status, and thus "countless" debtors pre-2011 had received a discharge despite arrears on direct payments. Id. at 18.

The other case holding that a debtor's direct payments are not "payments under the plan" for purposes of § 1328(a) is the recent case of In re Rivera, No. 2:13-20842, 2019 WL 1430273, at *4-6 (Bankr. D. Ariz. Mar. 28, 2019). As with Gibson, the debtors in Rivera had paid their prepetition mortgage arrears over the course of the plan but failed to make all of their direct postpetition mortgage payments to the creditor. The court relied heavily on Gibson to hold that "payments under the plan" means

---

[8] Rule 3002.1 requires lienholders on the debtor's principal residence to disclose, in response to the trustee's notice of final cure payment, whether the debtor is current on postpetition mortgage payments.

-11-

only those payments made to the trustee. It also viewed the direct payments by the debtors as payments "outside the plan," even though the plan provided for both the curing of the prepetition mortgage arrears and the debtors' direct postpetition mortgage payments to the creditor. Id. at *9. Interestingly, the Rivera court opined that the debtors could still seek to modify the plan under § 1329(a) to pay the postpetition arrears, but then conversely noted that a plan cannot be modified after completion of the payments under the plan, which, under the court's reasoning, occurred when the debtors made their last payment to the trustee. Id. at *10.

Arguably, the facts in both Gibson and Rivera weighed heavily on those courts' decisions to deny the motions to dismiss without discharge. In Gibson, the debtors' failure to make direct payments on their second mortgage was due to an innocent misunderstanding of their plan's requirements; they thought the trustee was going to make those payments. Further, the mortgage creditor failed to take any action until after the debtors had made their last plan payment to the trustee even though the creditor never received any direct maintenance payments. 582 B.R. at 22-23. In Rivera, the debtors did not default on their postpetition mortgage payments until **after** the 41-month plan was complete. 2019 WL 1430273, at *9-10. Thus, denying the debtors a discharge under those facts seemed particularly harsh.

While Gibson and Rivera are thoughtful and well-intended decisions, we respectfully disagree. And we perceive some flaws with interpreting the phrase "payments under the plan" to include only those payments made to the trustee. One is the different

-12-

outcomes that would result in conduit versus non-conduit jurisdictions. See In re Coughlin, 568 B.R. at 474. In a conduit district, where all payments to creditors are made by the chapter 13 trustee, postpetition mortgage payments would unquestionably be payments under the plan. But in a non-conduit or direct-pay district, postpetition mortgage payments made directly by the debtor would not be considered payments under the plan. The trustee in a conduit district would quickly observe the debtor's failure to pay the mortgage and could seek dismissal, if the debtor did not seek to modify the plan. In a non-conduit district, the debtor would know he stopped paying the mortgage, but, absent a motion for relief from stay from the mortgage creditor, the trustee, the court and other creditors would not know of the default, at least not until the trustee files her notice of final cure payment and the mortgage creditor responds with its statement in accordance with Rule 3002.1(g). As the Coughlin court correctly observed, whether postpetition mortgage payments are paid directly by the debtor or paid by the chapter 13 trustee should not be dispositive of granting a discharge under § 1328(a). 568 B.R. at 474. A direct-pay debtor should not receive a discharge that a conduit debtor would not. Such a result "is inconsistent both with the words and intent of chapter 13." Id.

In addition, the promise to maintain postpetition payments to a mortgage creditor is a mandatory element of the treatment of claims subject to § 1322(b)(5), and it is not severable. In re Dowey, 580 B.R. at 174. Failing to perform this promise is a material default of the plan, subjecting the case to dismissal

-13-

under § 1307(c)(6).[9] In re Young, No. 12-11509, 2017 WL 4174363, at *2 (Bankr. M.D. La. Sept. 9, 2017); In re Dowey, 580 B.R. at 174 (citing In re Formaneck, 534 B.R. 29, 35 (Bankr. D. Colo. 2015)); In re Heinzle, 511 B.R. at 82-83. We have difficulty reconciling that a debtor can receive a discharge after failing to make maintenance payments under § 1322(b)(5), when that same failure is grounds for case dismissal. See In re Dowey, 580 B.R. at 174.

While we understand the concern in Gibson and Rivera about misuse of Rule 3002.1, simply because debtors prior to 2011 were flying under the radar and receiving discharges despite not making all maintenance payments as required under § 1322(b)(5), does not mean that such practice was correct or give it any legitimacy. Perhaps as an unintended consequence, Rule 3002.1 has merely exposed the problem at a point in the case where modification to cure the postpetition arrears is no longer an option.

Lastly, to interpret "payments under the plan" to include only those payments made to the trustee raises an additional concern in cases where debtors have chosen to retain their home and the confirmed plan does not provide a 100% dividend to unsecured claims. The computation of disposable income to pay creditors under § 1325(b) takes into account the promised direct payments for housing, including § 1322(b)(5) maintenance payments. Debtors who fail to make these payments, which often amount to

---

[9] Section 1307(c)(6) provides, in relevant part:

[O]n request of a party in interest or the United States trustee and after notice and a hearing, the court may . . . dismiss a case under this chapter . . . for cause, including . . . material default by the debtor with respect to a term of a confirmed plan[.]

-14-

tens of thousands of dollars, benefit from years of living without mortgage payments at the expense of creditors. Had the debtor sold or surrendered the home, the distribution to unsecured creditors may have been the full amount owed as opposed to pennies on the dollar or nothing. See In re Dowey, 580 B.R. at 174; In re Formaneck, 534 B.R. at 34; Stephen J. Maier, Living Mortgage and Interest Free?: The Unwarranted Discharge For Debtors Who Fail To Make Direct Post-Petition Mortgage Payments, 82 ALB. L. REV. 643, 649 (2018). See also In re Coughlin, 568 B.R. at 473 ("Chapter 13 debtors who do not pay their post-petition mortgage payments are essentially claiming a deduction to which they are not entitled."). The concern is very real in this case. The Mrdutts failed to pay $123,819 in postpetition mortgage payments, yet they paid nothing to unsecured creditors. This raises the question of good faith for purposes of plan confirmation and plan modification under § 1325(a)(3).

Accordingly, we join the overwhelming majority of courts holding that a chapter 13 debtor's direct payments to creditors, if provided for in the plan, are "payments under the plan" for purposes of a discharge under § 1328(a) and hold that this same rule should apply in the context of post-confirmation plan modifications under § 1329(a). Although the language in § 1328(a) is slightly different from that in § 1329(a) — § 1328(a) uses the phrase "payments under **the** plan" while § 1329(a) uses the phrase "payments under **such** plan" — we see no reason to interpret these phrases differently. The word "such" simply describes the plan which has been confirmed. See In re Goude, 201 B.R. 275, 277 (Bankr. D. Or. 1996) ("There is no reason to attach a different

-15-

meaning to the completion of payments required in § 1328(a) from the same requirement in § 1329(a).").

Trustee argues that our cases Profit, Fridley and Escarcega support her position that the "completion of payments" under a plan for purposes of § 1329(a) means only those payments a debtor makes to the chapter 13 trustee. We disagree.

Profit actually supports our decision here. In Profit, the confirmed 60-month plan required the debtors to remit a tax refund to the trustee. 283 B.R. at 570. At some point prior to the plan's 54th month, the debtors gave the trustee a lump-sum payment which completed the projected plan payments. However, the debtors did not turn over the tax refund. Id. at 570-71. In the 54th month of the plan, the trustee moved to modify the plan to, among other things, compel the debtors to turn over the tax refund. Id. at 571. The debtors argued that the motion was untimely because the plan payments had been completed, and that the outstanding tax refund was not a plan payment.

The Panel held that, because the plan required the debtors to remit the tax refund to the trustee, the tax refund was a "plan payment" for purposes of § 1329(a). Id. at 573-74. The Panel further held that the motion to modify was timely under § 1329(a), because the plan payments had not been completed at the time the motion was filed due to the debtors' failure to remit the tax refund. In so holding, the Panel noted that, "[i]t is generally held that the payments alluded to [in § 1329(a)] are the payments required to be made by the debtor under the plan terms." Id. at 573. Contrary to Trustee's argument, Profit did not hold that only those payments a debtor makes to the chapter 13 trustee are

-16-

"payments under such plan" for plan modification purposes under § 1329(a).

Trustee never cited Fridley v. Forsythe (In re Fridley), 380 B.R. 538 (9th Cir. BAP 2007), to the bankruptcy court, and In re Escarcega, 573 B.R. 219 (9th Cir. BAP 2017), was issued after she filed this appeal. Trustee argues that these cases reinforce Profit's holding that the "completion of payments" for purposes of § 1329(a) properly relates to the payments that a debtor must pay to the trustee under the terms of his or her plan. Again, Profit's holding is not as narrow as Trustee suggests. Further, Fridley and Escarcega simply recognized the temporal requirements of chapter 13 plans and that payments under a plan must continue for the duration provided for in the initial plan, absent modification, before they can be considered "complete" for purposes of discharge and modification. See In re Escarcega, 573 B.R. at 240; In re Fridley, 380 B.R. at 543-44. These cases did not hold that "completion of payments" for purposes of § 1329(a) means only those payments a debtor makes to the chapter 13 trustee.

Even if Trustee were correct that the payments were complete when the Mrdutts made their final payment to her, we would still disagree with Trustee's conclusion. In effect, the Plan required the Mrdutts to make monthly payments in a fixed amount **plus** an additional amount necessary to cure their prepetition arrears, unless they obtained a loan modification that eliminated the arrears. These additional monthly payments were required payments even though the Mrdutts did not take the required steps to quantify them.

-17-

Trustee's arguments are also undermined by her action of filing the notices of plan completion. In those notices, Trustee asserted that the Mrdutts were not entitled to a discharge because they had failed to deal with their prepetition mortgage arrears. In other words, the notices suggest that Plan payments were not complete for purposes of a discharge under § 1328(a) because of the uncured arrears. If that is true, then why should they be considered complete for purposes of plan modification under § 1329(a)? It makes little sense to say that a debtor's plan payments are complete for determining whether the debtor has timely moved to modify the plan, but to say they are not complete for the purpose of denying the debtor a discharge.

The Plan provided for the curing of the Mrdutts' prepetition mortgage arrears by either a loan modification or a modified plan and for direct postpetition mortgage payments to Wells Fargo. We conclude that all of these payments were "payments under such plan" for purposes of § 1329(a). Because the Mrdutts failed to satisfy the obligation of their prepetition arrears, and also failed to make their direct postpetition mortgage payments, their Plan payments were not "complete" under § 1329(a). Accordingly, we agree with the bankruptcy court that the Motion to Modify was timely.

**B. The bankruptcy court erred in determining that the Plan, as modified, complied with § 1329(c).[10]**

Although the bankruptcy court did not expressly rule that

---

[10] Section 1329(c) mandates that a modification "may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B) after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time."

modification was permissible under § 1329(c), it implicitly ruled that it was by granting the Motion to Modify. Trustee argues that the court had no statutory authority to approve a modified plan that provided for payments several months beyond the 60-month time limit. We agree.

No fewer than three Code provisions, §§ 1322(d), 1325(b)(4), and 1329(c), prohibit a plan exceeding five years in length. Section 1329(c) specifically prohibits the court from approving a plan modification that would "provide for payments" beyond five years. Here, the 60-month period for the Plan expired in October 2016; the Motion to Modify was filed in June 2017, the 67th month after which the Mrdutts' first Plan payment came due.

Although we held in Profit that the trustee's motion to modify was timely under § 1329(a) due to incomplete plan payments, we also held that the trustee's modification request failed because it required payments in excess of the 60-month time limitation in § 1329(c) and its counterpart, § 1322(d). 283 B.R. at 573-74. See also In re Heinzle, 511 B.R. at 79 (modification may not occur after completion of the 60-month term for plan payments); In re Goude, 201 B.R. at 276-77 (dismissing case because plan could not be modified since the 60-month period had expired and plan could not be extended to include payment of priority tax claims).

The Mrdutts sought to modify the Plan to surrender the residence in satisfaction of the Wells Fargo debt. They argue that surrender is not a "payment" and therefore does not violate the 60-month rule in § 1329(c). We conclude that surrender **is** a form of payment for purposes of § 1329(c). Numerous courts have

-19-

so held. See Bank One, N.A. v. Leuellen, 322 B.R. 648, 652-54 (S.D. Ind. 2005); In re Fayson, 573 B.R. 531, 535 (Bankr. D. Del. July 13, 2017)("Surrender of collateral is a form of payment under the Code."); In re Dennett, 548 B.R. 733, 737 (Bankr. N.D. Tex. 2016) (holding that surrender is a payment of debt but allowing plan modification to surrender because debtors were only 40 months into their 60-month plan); In re Jones, 538 B.R. 844, 849 (Bankr. W.D. Okla. 2015) (holding that § 1322(b)(8), which applies to plan modifications under § 1329(a), "plainly and unequivocally contemplates that surrender of collateral is a form of payment"); In re Tucker, 500 B.R. 457, 462 (Bankr. N.D. Miss. 2013); In re Davis, 404 B.R. 183, 194-95 (Bankr. S.D. Tex. 2009). Thus, allowing the surrender after the 60-month term had expired was contrary to § 1329(c).

Besides a time limitation problem, it is not clear that modification of the Plan was even appropriate. A modified plan is essentially a new plan and must be consistent with the statutory requirements for confirmation. In re Profit, 283 B.R. at 574; McDonald v. Louquet (In re Louquet), 125 B.R. 267, 268 (9th Cir. BAP 1991). This includes compliance with §§ 1322(a), 1322(b), 1323(c), and 1325(a). See § 1329(b)(1). At minimum, good faith was in question when unsecured creditors received nothing under the Plan while the Mrdutts retained over $100,000 by failing to make their required postpetition mortgage payments. See § 1325(a)(3).

This is not a case where the debtors sought a reasonable extension of time beyond the 60 months to catch up on some missed plan payments or fees. See In re Profit, 283 B.R. at 576 n.11

-20-

(noting the difference between plan modification and the cure of plan payments within a reasonable time after the plan has expired in order to prevent case dismissal). The Mrdutts asked the bankruptcy court to modify a confirmed plan to surrender an asset of the estate and extinguish a secured claim seven months after the 60-month period had already expired. The court had no authority to modify a plan that allowed for payment beyond the 60-month time limit. Accordingly, it abused its discretion in granting the Motion to Modify.

## VI. CONCLUSION

We do not ignore the sad facts of this case and the bankruptcy court's understandable desire to do equity. But the Mrdutts should have been more proactive in their bankruptcy case and sought relief from the court when it was apparent that the loan modification with Wells Fargo was futile. The same goes for Wells Fargo, which sat idly by and did not seek relief from stay until after the Mrdutts had made all of their Plan payments to Trustee and the postpetition mortgage arrears were so astronomical. However, for the reasons stated above, we REVERSE.

-21-