ORDERED PUBLISHED

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>KIRK EUGENE FRANTZ and MARY<br>ELIZABETH FRANTZ,<br><div align="center">Debtors.</div> | BAP No. CC-23-1112-FLG<br><br>Bk. No. 6:15-bk-19432-MH |
| JENNY L. DOLING,<br><div align="center">Appellant.</div> | **OPINION** |

Appeal from the United States Bankruptcy Court
for the Central District of California
Mark D. Houle, Bankruptcy Judge, Presiding

APPEARANCES

Appellant Jenny L. Doling argued pro se.

Before: FARIS, LAFFERTY, and GAN, Bankruptcy Judges.

FARIS, Bankruptcy Judge:

## INTRODUCTION

Appellant Jenny L. Doling represented debtors Kirk Eugene Frantz

and Mary Elizabeth Frantz during their chapter 13[1] bankruptcy case. At the

---

[1] Unless specified otherwise, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules
of Bankruptcy Procedure, all "Civil Rule" references are to the Federal Rules of Civil
Procedure, and all "LBR" references are to the Local Bankruptcy Rules of the United

end of the plan term, the chapter 13 trustee sought to dismiss the case because the Debtors were over $50,000 delinquent on direct mortgage payments. Ms. Doling nevertheless told the bankruptcy court that the Debtors had completed their chapter 13 plan. The bankruptcy court found that the statement was knowingly false and intended to mislead the court because the Debtors could not have completed the plan if they were delinquent on their direct mortgage payments. The court sanctioned her and denied her motion for reconsideration.

On appeal, Ms. Doling argues that the bankruptcy court clearly erred in finding that she intentionally made a false statement to deceive the court and that the sanction was excessive. Although we recognize the bankruptcy court's frustration with Ms. Doling's substandard performance, her statement ultimately was not frivolous as a matter of law because her position had some basis in law. We therefore REVERSE the bankruptcy court's imposition of sanctions.

We publish to highlight the standards for and limitations of Rule 9011 sanctions, particularly when the court initiates the sanctions process.

## FACTS

**A.      The Debtors' chapter 13 petition, plan, and motion to avoid lien**

In September 2015, the Debtors, represented by Ms. Doling, filed a chapter 13 petition. They scheduled their residence located in Big River,

---

States Bankruptcy Court for the Central District of California.

2

California (the "Property") with a value of $360,000 that was subject to a first mortgage lien in favor of Ditech Financial LLC. Ditech Financial filed a proof of claim for $503,423.38.

The Debtors also scheduled a $100,000 lien against the Property held by John Irving, Trustee of the Irving Family Trust (the "Irving Lien").

In 2015, the bankruptcy court confirmed the Debtors' plan. The plan required the Debtors to make payments to the trustee for five years (which the Trustee would use in part to cure the prepetition arrears on the first mortgage) and to make the regular contractual postpetition payments on the first mortgage directly to Ditech Financial.

While plan confirmation was pending, the Debtors filed a motion to avoid the Irving Lien (the "Lien Avoidance Motion"). They argued that the amount of the first mortgage lien exceeded the value of the Property, which rendered the Irving Lien wholly unsecured and avoidable. The bankruptcy court granted the Lien Avoidance Motion and provided that the avoidance was effective upon "completion of the chapter 13 plan."

The Debtors had great difficulty carrying out their plan. The trustee filed fourteen motions to dismiss because the Debtors failed to make their payments to the trustee. The Debtors modified their plan multiple times, including extending the plan term from five years to seventy-eight months.[2]

---

[2] Under current law, the maximum duration of a chapter 13 plan is five years from the due date of the first plan payment. Section 1329(d) (which has since expired)

## B. The trustee's motion to dismiss

In May 2022, the trustee filed his notice of intent to file a final report, indicating that the Debtors had made all of the required payments to the trustee, that the prepetition arrears on the first mortgage had been paid in full, and that the case was nearing its end. The Bank of New York Mellon ("BNYM"), which had since acquired the first mortgage, responded that the Debtors were $52,439.58 delinquent on their postpetition, direct mortgage payments.

Shortly thereafter, the trustee filed a motion to dismiss the case (the "Motion to Dismiss"). The trustee argued that, pursuant to *Derham-Burk v. Mrdutt (In re Mrdutt)*, 600 B.R. 72 (9th Cir. BAP 2019), and *In re Evans*, 543 B.R. 213 (Bankr. E.D. Va. Jan. 5, 2016), "direct payments made by a debtor in a chapter 13 plan constitute 'payments under the plan' for purposes of eligibility for discharge under . . . § 1328(a)." The trustee contended that the failure to make those payments constituted a material default under the plan.

The Debtors did not file an opposition to the Motion to Dismiss, but Ms. Doling appeared at the hearing on the motion. She did not contest the legal basis of the Motion to Dismiss but instead argued that a pending loan modification would eliminate the postpetition mortgage arrears. The

allowed chapter 13 debtors who were experiencing financial hardship due to the COVID-19 pandemic to modify confirmed plans by (among other things) extending the life of the plan to seven years.

4

bankruptcy court granted her request for a four-week continuance to resolve the matter with BNYM. It explicitly directed her to file a declaration if the matter was not resolved prior to the hearing.

Ms. Doling ignored the court's directive to file a declaration. But she did file a local form document, "Debtor's Certificate of Compliance Under 11 U.S.C. § 1328(a) and Application for Entry of Discharge," for each of the Debtors. She checked the box indicating: "I have completed all payments required by my confirmed plan." By the time she filed these papers for the Debtors, Ms. Doling knew that the Debtors had not made their direct mortgage payments, that the trustee and the court believed that dismissal was appropriate because the plan required them to make those payments, and that she had not argued otherwise.

At the second hearing, the Debtors had not cured the mortgage loan default or filed the required declaration. Counsel for the trustee represented that the mortgage servicer had approved a loan modification. Ms. Doling apologized for not filing the declaration as directed by the court, but she maintained her belief that BNYM would amend its response to indicate that the Debtors were current on their direct payments and that the trustee would withdraw the Motion to Dismiss.

The bankruptcy court expressed frustration with the case and skepticism of Ms. Doling's position. It agreed to continue the hearing for about a month but cautioned that it would dismiss the case unless the court was presented with an "unqualified withdrawal" of BNYM's response that

5

the first mortgage was in default.

After the second hearing, Ms. Doling signed and filed a form document titled, "Declaration re: Debtor's Motion to Avoid Lien on Principal Residence" (the "Doling Declaration"). The Doling Declaration recounted that the court had granted the Lien Avoidance Motion in 2015 but had "provided that the avoidance of the junior lien of [John Irving] would be effective upon . . . Completion of the Chapter 13 plan[.]" She checked the box indicating that "Debtor [sic] has completed the Chapter 13 plan." Ms. Doling also uploaded a proposed order granting the Lien Avoidance Motion and avoiding the Irving Lien, but she did not set the matter for hearing.

When Ms. Doling filed these papers, she knew that the Debtors had not made the direct mortgage payments that the plan required and that they had not cured their default. She also knew that the court believed that the plan required the Debtors to make the direct payments in addition to the payments to the trustee.

The bankruptcy court did not enter Ms. Doling's proposed order; instead, it set the Lien Avoidance Motion for hearing along with the third hearing on the Motion to Dismiss.

Mr. Frantz filed a declaration in response to the Motion to Dismiss. He stated that he and his wife had successfully completed a trial loan modification and were awaiting the final loan modification from the lender.

6

Ms. Doling also filed a declaration. She echoed Mr. Frantz's declaration and stated that "Debtors' loan is now deemed current after trial loan modification payments have been made[,]" and "Debtors are awaiting final loan modification paperwork from lender."

At the third hearing, counsel for BNYM's servicer indicated that it was "in the process of finalizing a loan modification with the Debtors, but by virtue of it not having been finalized, we can't say that it's been wrapped up, but it's imminent." He stated that, until the loan modification agreement was finalized, "their default exists."

The bankruptcy court noted that the seventy-eight-month plan term had ended six months prior. It acknowledged that the loan modification was in progress but stated that it was unwilling to delay ruling on the Motion to Dismiss again. It noted the fourteen motions to dismiss and stated that the "case appear[ed] to have been infeasible on inception."

Ms. Doling argued that the Debtors had worked hard to cure their loan defaults and insisted that "[t]hey have completed their plan." She asked for another continuance, stating that, if the case were dismissed, the Irving Lien would not be avoided, and the Debtors would lose their home.

The bankruptcy court denied any further continuance and granted the Motion to Dismiss.[3] It then questioned Ms. Doling as to why she had stated in the Doling Declaration that the Debtors had completed the

---

[3] The Debtors did not appeal the order granting the Motion to Dismiss.

chapter 13 plan. The court explained that, "under applicable law, those direct plan payments are plan payments," so it was not true that the Debtors had completed their plan. The bankruptcy court was also displeased that Ms. Doling had filed the Doling Declaration and lodged the proposed order without setting the Lien Avoidance Motion for hearing, because the court might have entered the order based on a false representation if the matter had "slipped through." Ms. Doling disagreed, arguing the Debtors had completed all of their monthly plan payments to the trustee.

## C.    The order to show cause

The bankruptcy court issued an order (the "OSC") directing Ms. Doling to show cause why she should not be sanctioned under Rule 9011 or the bankruptcy court's inherent sanction authority and LBR 2090-2 for her "knowingly false statement."

Ms. Doling responded aggressively. She defended her reputation and disputed that she would ever knowingly make a false statement to the court. She placed blame on everyone but herself: she questioned the court's judgment, commenting that it would repeatedly "misdirect" its frustration at her and other attorneys[4] and implying that it was "intimidating" her for

---

[4] Ms. Doling stated that she is "the go-to referral for cases from highly qualified attorneys who will no longer file cases in the Riverside Division of the Central District of California." She complained that, "[t]ime and again, Counsel felt this court's frustration was misdirected at her, as seems to be the case with many attorneys appearing on behalf of consumer debtors." She also implied that the bankruptcy court

8

advocating for the Debtors; she claimed that her paralegal followed a "tried and true" internal checklist when generating the Doling Declaration and lodging the proposed order; and she complained that BNYM had not provided a courtesy notice to the Debtors that they were delinquent on their direct mortgage payments.

Ms. Doling never admitted that her statement was incorrect and instead disputed the court's statements that direct mortgage payments constituted payments under the plan. She insisted that "there is no binding Ninth Circuit authority that direct mortgage payments are payments under the plan." She contended that the bankruptcy court's reliance on the BAP's *Mrdutt* decision was misplaced, because the BAP was focused on a different issue and the BAP decision "is not precedent[.]" Similarly, she contended that the Ninth Circuit's decision in *Silva v. Danielson (In re Silva)*, No. 21-55873, 2022 WL 2340802 (9th Cir. June 29, 2022), was inapplicable because it was not published. Rather, she cited out-of-circuit cases for the proposition that direct mortgage payments are not "payments under the plan."

Ms. Doling also insisted that she did not try to "sneak" anything past

was not busy and would be at fault if it did not catch the parties' mistakes: she argued that the court's concerns ignored its "independent duty and judgment to review the orders before entering them[ ]" and that she had "no reason to believe this Court would ever enter an order it did not approve, especially in a time where bankruptcy filings are at a historical low, and this Division of the Central District of California just gained a fourth bankruptcy judge to share the historically low case load."

the court and instead believed that, if the case were dismissed, the Lien Avoidance Motion would be denied.[5]

**D.      The order sanctioning Ms. Doling**

At the hearing on the OSC, the bankruptcy court noted that Ms. Doling still did not acknowledge "that what was done was improper." It said that it would sanction her $5,000, which would require reporting to the California state bar.

Four months later, the bankruptcy court entered its order sanctioning Ms. Doling ("Sanctions Order").[6] It stated that Ms. Doling did not file any opposition or otherwise challenge the legal basis for the Motion to Dismiss: that the Debtors were in material default with respect to direct mortgage payments pursuant to *Mrdutt* and *Silva*, which hold that direct payments are plan payments. Rather, it said that the Debtors and Ms. Doling filed multiple documents unrelated to the Motion to Dismiss that declared that all plan payments were made and hoped that the court would sign the proposed order granting the Lien Avoidance Motion.

---

[5] Ms. Doling later filed a supplemental response that attached an amicus curiae brief filed by the United States Solicitor General in an unrelated case.

[6] The bankruptcy court acknowledged the delay in entering the Sanctions Order. It explained that it had considered dismissing the OSC but ultimately concluded it could not "sweep the matter under the rug" and needed to protect the integrity of the bankruptcy system because "Ms. Doling's advocacy in this matter crossed the line from zealous to overzealous to, ultimately, unethical, and thus the Court feels compelled to issue this order to prevent similar behavior in the future, or at least make clear it will not go unaddressed."

Regarding the statement in the Doling Declaration that the Debtors had "completed the Chapter 13 plan," the bankruptcy court stated that, while the plan term had ended, the plan was not "completed" until all plan payments had been made. It found that she was aware of the court's position yet knowingly and intentionally represented that the Debtors had completed the chapter 13 plan; it also said that her statement was not inadvertent or mistaken, as she continued to defend the appropriateness of the statement.

The bankruptcy court rejected Ms. Doling's argument that the direct payments were not payments under the plan. It said that she could have made that argument in opposition to the Motion to Dismiss but neglected to do so; as such, she was "not free to simply . . . retroactively adopt a minority position and revise the history of this matter. Quite simply, the legal conclusion that direct payments are plan payments was uncontested in this case, and, therefore, the factual statement that Debtors had completed the plan was not true."

The court concluded that Ms. Doling's "actions and the attempt to obtain an order avoiding the Irving Family Lien, as well as the attempt to obtain discharges of Debtors . . . constitutes willful and subjective bad faith by Ms. Doling given the circumstances of the case." It held that sanctions were warranted under Rule 9011(c) or, alternatively, under its inherent sanction authority and LBR 2090-2 for "willful, bad faith conduct."

11

## E.    The motion for reconsideration

Ms. Doling filed a motion requesting that the bankruptcy court reconsider the Sanctions Order ("Motion for Reconsideration"). Her motion adopted a somewhat more contrite tone and for the first time admitted that she had made a "mistake." She stated that she never knowingly or intentionally made a material misrepresentation to the court and that she had no intention to deceive the court. She claimed that, after reading the Sanctions Order, she realized that her responses to the OSC lacked clarity and she did not realize that the court had expected her to be contrite.

Ms. Doling undercut her stated contrition by again attacking the bankruptcy court. She claimed that "outstanding" attorneys "have recently been threatened with sanctions, issued sanctions, or have felt vulnerable in practice here, something never before experienced and that has caused respected attorneys to abandon this division. This was my failed attempt to bring to light concerns and a desire to restore a collegial atmosphere."

She argued again that it was not well-settled law that direct payments are "payments under the plan." She stated that she believed that the Debtors had made all plan payments and therefore it was appropriate to lodge the order granting the Lien Avoidance Motion.

Ms. Doling insisted that she believed that the dismissal of the case "controlled," i.e., that dismissal of the case would obviate the Lien Avoidance Motion, so her statement was not meant to mislead the court. She stated that she had corrected her office procedures to ensure that this

12

error would not happen again.

She also asked the court to reduce the sanction from $5,000 to $1,000, so she would not have to report it to the state bar.

After a hearing, the court issued an order denying the Motion for Reconsideration ("Reconsideration Order"). It held that Ms. Doling's factual assertions "simply are not logical, realistic or supported when viewed as a whole." It pointed out inconsistencies in her arguments and declined to address her continued implication that many bankruptcy practitioners felt the bankruptcy court was unfair. The court rejected the request to reduce the sanction, reflecting that it had "struggled greatly at significant length" with the issues but ultimately decided that sanction was necessary to require candor from counsel.

Ms. Doling timely appealed from the Sanctions Order and the Reconsideration Order. At no point did she withdraw the offending documents.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in sanctioning Ms. Doling for making knowingly false statements to the court.

## STANDARD OF REVIEW

We review for an abuse of discretion the bankruptcy court's

imposition of sanctions under both Rule 9011 and its inherent sanctioning authority. *See Fjeldsted v. Lien (In re Fjeldsted)*, 293 B.R. 12, 18 (9th Cir. BAP 2003); *see also Shalaby v. Mansdorf (In re Nakhuda)*, 544 B.R. 886, 898 (9th Cir. BAP 2016) ("We also review the bankruptcy court's interpretation and application of a local rule for an abuse of discretion."), *aff'd*, 703 F. App'x 621 (9th Cir. 2017). The court's denial of a motion for reconsideration is also reviewed for an abuse of discretion. *See Ocwen Loan Servicing, LLC v. Marino (In re Marino)*, 577 B.R. 772, 781 (9th Cir. BAP 2017), *aff'd in part, appeal dismissed in part*, 949 F.3d 483 (9th Cir. 2020).

To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, we consider whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc).

## DISCUSSION

### A. The bankruptcy court has discretion to sanction attorneys for misconduct and improper litigation tactics.

#### 1. Rule 9011

The bankruptcy court first determined that sanctions were appropriate under Rule 9011. Rule 9011(b) provides, in summary, that when an attorney signs or files a document with the court, she is certifying

14

to the best of her knowledge that she is not presenting the document "for any improper purpose," that the legal contentions are warranted, and that the factual assertions have evidentiary support. The bankruptcy court may initiate Rule 9011 proceedings on its own initiative. Rule 9011(c)(1)(B). If the bankruptcy court determines that the attorney has violated the rule, it may impose a sanction "limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Rule 9011(c)(2). The central purpose of the rule is to deter baseless filings. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) (Civil Rule 11).

> We have stated that
>
> Rule 9011 *empowers* bankruptcy courts to impose sanctions upon the signers of paper where a) the paper is frivolous, or b) the paper is filed for an improper purpose. In fact, the bankruptcy court is *required* to impose sanctions on the signer of a paper if he or she files a frivolous paper or files a paper for an improper purpose.

*In re Brooks-Hamilton*, 400 B.R. 238, 249 (9th Cir. BAP 2009) (cleaned up). However, the Ninth Circuit has urged restraint when imposing Civil Rule 11 sanctions: "[F]orceful and effective representation often will call for innovative arguments. For this reason, sanctions should be reserved for the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir.

1997) (cleaned up).

"Rule 9011(b) incorporates a reasonableness standard which focuses on whether a competent attorney admitted to practice before the involved court could believe in like circumstances that his actions were legally and factually justified." *In re Nakhuda*, 544 B.R. at 899. Additionally, when the court imposes sanctions on its own initiative, it must "apply a higher standard 'akin to contempt' . . . ." *Id.* The Ninth Circuit has explained that:

> This [Civil Rule 11] standard is applied with particular stringency where, as here, the sanctions are imposed on the court's own motion. In that circumstance – unlike the situation in which an opposing party moves for [Civil] Rule 11 sanctions – there is no "safe harbor" in the Rule allowing lawyers to correct or withdraw their challenged filings. In light of this important distinction, sua sponte sanctions will ordinarily be imposed only in situations that are akin to a contempt of court.

*United Nat'l Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1115-16 (9th Cir. 2001) (cleaned up).

### 2.    Inherent authority

The bankruptcy court also held that sanctions were warranted pursuant to its inherent authority and LBR 2090-2.

It is well settled that federal courts, including bankruptcy courts, have inherent power to impose sanctions for a broad range of willful or improper litigation conduct. *See Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1196 (9th Cir. 2003). The inherent power to sanction bad-faith conduct is broader than Rule 9011 sanctions and "extends to a full range of

litigation abuses." *Miller v. Cardinale (In re Deville)*, 280 B.R. 483, 495 (9th Cir. BAP 2002) (citation omitted), *aff'd sub nom. Miller v. Cardinale (In re DeVille)*, 361 F.3d 539 (9th Cir. 2004).

The Ninth Circuit has stated that a court may impose sanctions pursuant to its inherent authority when it finds:

> willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose. . . . [A]n attorney's reckless misstatements of law and fact, when coupled with an improper purpose, . . . are sanctionable under a court's inherent power.

*Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001).

"Before awarding sanctions under its inherent powers, however, the court must make an explicit finding that counsel's conduct 'constituted or was tantamount to bad faith.'" *Primus Auto. Fin. Servs., Inc.*, 115 F.3d at 648 (citation omitted); *see also Fink*, 239 F.3d at 992 ("In reviewing sanctions under the court's inherent power, our cases have consistently focused on bad faith. . . . [A] specific finding of bad faith . . . must precede any sanction under the court's inherent powers." (cleaned up)).

The court also referenced LBR 2090-2. That rule provides that an attorney "submits to the discipline of the court. If a judge has cause to believe that an attorney has engaged in unprofessional conduct, the judge may[,]" among other things, "[i]nitiate proceedings for civil or criminal contempt" and "[i]mpose other appropriate sanctions[.]" LBR 2090-2(b).

17

**B.     As a matter of law, the bankruptcy court erred in sanctioning Ms. Doling under Rule 9011, its inherent powers, and the LBR.**

Ms. Doling argues on appeal that the bankruptcy court erred in its factual findings that she knowingly made a false statement and intended to mislead the court. She abandons her indignation at the bankruptcy court's ruling and criticism of the court's perceived unfairness toward debtors' counsel and instead admits that she was negligent (and perhaps even reckless) and "distracted" but did not act in bad faith. We do not see any error in the bankruptcy court's factual findings and, if that were the only issue before us, we would affirm.

But the court's finding of her intent presupposes that her statement was false: in other words, that the Debtors had not made all of the "payments under the plan." This statement in turn presupposes that the direct payments to the mortgagee were "payments under the plan." The question of whether direct payments are "payments under the plan" is a pure question of law.[7] While Ms. Doling's conduct in the bankruptcy court

---

[7] Ms. Doling does not explicitly argue on appeal that the bankruptcy court erred as a matter of law. She apparently thinks that she cannot do so because she did not raise the argument in opposition to the Motion to Dismiss. But she did raise the argument in her response to the OSC and Motion for Reconsideration. Because (1) she at least touched on the argument in the bankruptcy court and in her opening brief, (2) the issue is a purely legal matter, and (3) it is hard to disentangle the factual issue of her intent to make a false statement from the legal question of whether that statement was false, we will address the issue. *See United States v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992) (stating that we may consider an issue not raised in the opening brief "if a failure to do so would result in manifest injustice").

was unprofessional and substandard, we hold that, as a matter of law, there was a reasonable legal basis for her argument, so the bankruptcy court erred in sanctioning her under the authorities on which it relied.

The Ninth Circuit has reversed sanctions where a "plausible, good faith argument can be made by a competent attorney to the contrary." *Zaldivar v. City of L.A.*, 780 F.2d 823, 833 (9th Cir. 1986), *abrogated on other grounds by Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990). It stated that, "[i]f, judged by an objective standard, a reasonable basis for the position exists in both law and in fact at the time that the position is adopted, then sanctions should not be imposed." *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1538 (9th Cir. 1986). It directed that, when imposing Civil Rule 11 sanctions, the court must "look[ ] to whether or not a basis in law or fact exists . . . . [S]anctions should not have been imposed where a 'plausible good faith argument can be made.'" *Id.* at 1541 (quoting *Zaldivar*, 780 F.2d at 832).

In this case, Ms. Doling declared to the bankruptcy court that the Debtors had completed the chapter 13 plan. This statement implicitly represented that the Debtors had made all of their "payments under the plan." § 1328(a). The bankruptcy court could not sanction Ms. Doling if her position had a plausible, good faith legal basis, even if she did not explicitly argue that basis when she filed the Doling Declaration.

We cannot say that Ms. Doling's contention about the direct payments lacked a reasonable basis in law. In her response to the OSC, she

19

urged the court to disregard *Mrdutt* and similar authority and cited decisions from courts outside the circuit, which she characterized as a "rising minority," holding that direct payments are not "payments under the plan."

It is true that we have rejected Ms. Doling's argument. In *Mrdutt*, we surveyed case law and stated that:

> when the chapter 13 plan provides for the curing of prepetition mortgage arrears and a debtor's direct postpetition maintenance payments in accordance with § 1322(b)(5), such direct payments are "payments under the plan." And if the debtor does not complete "all payments under the plan," the debtor is not entitled to a discharge."

600 B.R. at 77. However, this view is not uniform throughout the country. In *Mrdutt*, we acknowledged two decisions that reached the opposite conclusion and described them as "thoughtful and well-intended decisions[.]" *Id.* at 80. Indeed, at least one court within the circuit has recognized a "split in authority" and adopted the "minority position" that courts cannot "deny discharges and dismiss cases based solely on direct pay post-petition mortgage defaults." *In re Rivera*, 599 B.R. 335, 339, 342 (Bankr. D. Ariz. 2019). Additionally, the Ninth Circuit has recognized that, for purposes of Rule 9011, a BAP decision cannot be the basis for sanctioning a party for seeking a contrary result in a district where the underlying issue is unresolved. *See Bank of Maui v. Est. Analysis, Inc.*, 904 F.2d 470, 472 (9th Cir. 1990) ("Whether a BAP decision is controlling

20

authority for the circuit as a whole has not been decided by this court. . . . We need not and do not decide the authoritative effect of a BAP decision because, for the purposes of Bankruptcy Rule 9011, its binding effect is so uncertain that it cannot be the basis for sanctioning a party for seeking a contrary result in a district where the underlying issue has never been resolved."). Therefore, notwithstanding *Mrdutt*, competent counsel could make a nonfrivolous argument that the bankruptcy court should adopt the minority view.

The Ninth Circuit's decision in *Silva* also does not render the argument frivolous. In *Silva*, the Ninth Circuit decision cited *Mrdutt* and held that the debtor "committed a material default with respect to a term of the confirmed Chapter 13 plan by failing to make contractual post-petition payments to creditors." 2022 WL 2340802, at *1. However, *Silva* is an unpublished decision that is not precedent except in certain circumstances not applicable here. *See id.* at *1 n.2; 9th Cir. Rule 36-3 ("Unpublished dispositions and orders of this Court are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion.").

While this Panel is bound by *Mrdutt* (and we continue to think that it is correct), a reasonable attorney could argue that the bankruptcy court should follow the minority view. *See generally Reiffin v. Microsoft Corp.*, 158 F. Supp. 2d 1016, 1029 (N.D. Cal. 2001) ("[Civil Rule] 11(b)(2) is only violated when the claim is not warranted by existing law or a nonfrivolous

21

argument for the change of that law."); *Remington Invs., Inc. v. Kadenacy*, 930 F. Supp. 446, 451 (C.D. Cal. 1996) ("[A] legal claim for which no mandatory authority exists does not present good grounds for sanctions because the law of the jurisdiction is unsettled."). The bankruptcy court incorrectly held that Ms. Doling's failure to raise this legal argument prior to the OSC precluded her from "retroactively adopt[ing] a minority position . . . ." Ms. Doling had a reasonable basis to argue that the statement was not legally incorrect; she articulated that legal theory late and ineffectively, but that does not rise to the level necessary for Rule 9011 sanctions initiated by the court.

When the court initiates Rule 9011 sanctions, that level is a higher standard "akin to contempt." *See United Nat'l Ins. Co.*, 242 F.3d at 1116 ("[S]ua sponte sanctions will ordinarily be imposed only in situations that are akin to a contempt of court."). The standard is not well developed, but, "at bottom, the 'akin to contempt' standard seems to require conduct that is particularly egregious and similar to conduct that would be sanctionable under the standards for contempt." *In re Nakhuda*, 544 B.R. at 901.

As we discussed above, Ms. Doling's conduct was lacking and negligent, but her statement was not frivolous or egregious, given the state of the law. There would be no basis to find that she committed contempt of court. We thus hold that the bankruptcy court erred as a matter of law in concluding that the Doling Declaration warranted sanctions under the heightened standard.

22

The bankruptcy court also found that Ms. Doling filed the Doling Declaration for an improper purpose: she hoped that the bankruptcy court would routinely enter the order avoiding the Irving Lien without a hearing or close scrutiny. However, because the Doling Declaration was arguably supported by the law (which would lead to avoidance of the Irving Lien even if the direct payments were not made), its submission was not for an improper purpose. *See Golden Eagle Distrib. Corp.*, 801 F.2d at 1538 (emphasizing the "objective nature of the standard" when considering whether a filing was made for an improper purpose).

For the same reasons, the court abused its discretion in sanctioning Ms. Doling for "willful" and "bad faith" conduct under its inherent powers. *See Fink*, 239 F.3d at 994 ("[A]n attorney's reckless misstatements of law and fact, when coupled with an improper purpose, . . . are sanctionable under a court's inherent power."). The bankruptcy court found that the misstatement in the Doling Declaration was knowing and intentional. It also found that she acted with an improper purpose, such that her conduct was tantamount to bad faith. However, as we discussed above, there was no sanctionable misstatement of law or improper purpose, since Ms. Doling could reasonably argue that the bankruptcy court should not follow *Mrdutt*.

Likewise, Ms. Doling's conduct did not warrant sanctions under LBR 2090-2. Taking a position that is supported by a minority of courts is not "civil or criminal contempt." A monetary sanction cannot be "appropriate"

23

within the meaning of the local rule if neither the national rules nor the court's inherent powers authorizes it.

## CONCLUSION

The standards for imposing monetary sanctions against counsel either under Rule 9011 (particularly when imposed sua sponte by the court) or pursuant to the court's inherent power are unquestionably and necessarily high. We do not believe that those standards were met in this case; when judged objectively, a "plausible, good faith argument can be made by a competent attorney" that Ms. Doling's statements were not false. We therefore REVERSE the bankruptcy court's imposition of monetary sanctions.[8]

But we are also compelled to note expressly and forcefully that in no sense should our reversal of these monetary sanctions be considered a "vindication," or even a partial justification, of Ms. Doling's conduct in this matter. We agree with the bankruptcy court that Ms. Doling's conduct fell below the level we expect from bankruptcy practitioners, particularly those with Ms. Doling's experience. She could have resolved the issue quickly and easily by either acknowledging her mistake and withdrawing the Doling Declaration or supporting the reasonableness of her legal position; instead, she decided to question the integrity of the bankruptcy court. Indeed, her conduct before the bankruptcy court ranged from negligent to

---

[8] Because we hold that the court erred in determining that sanctions were warranted, we do not consider whether the amount of sanctions was appropriate.

reckless to seriously misleading; her efforts to explain or justify her conduct when responding to the court's OSC were sorely lacking in logic and in candor, and her tone was at times defiant. Ms. Doling's tone was markedly more apologetic before this Panel, although it was hardly reflective of the potential harm her conduct has caused, in particular to the integrity of the judicial process. That process depends on the court's faith in, and ability to rely upon, the complete candor, truthfulness, and professionalism of the counsel before it.

The court's power to address these deficiencies is not limited solely to the imposition of monetary sanctions. Essential to the court's "inherent power" is the ability to monitor counsel's performance and to insist not merely on competence for counsel's clients, but that level of candor and professionalism necessary to ensure the proper and expeditious working of the judicial system.

In this instance, the bankruptcy court exceeded its powers to impose monetary sanctions, but we acknowledge that Ms. Doling's conduct clearly justified the court's disapproval. Measures to address her actions might be found in other, more rehabilitative processes, including referral to the Central District of California Bankruptcy Court's Disciplinary Panel, pursuant to Sixth Amended General Order 96-05. We leave it to the sound judgment of the bankruptcy court to decide if a referral to that panel is warranted in this instance.